ROBERT E. KREBS, CA Bar No. 057526
rkrebs@nixonpeabody.com
CHRISTOPHER L. OGDEN, CA Bar No. 235517
cogden@nixonpeabody.com
NIXON PEABODY LLP
200 Page Mill Road, 2nd Floor
Palo Alto, CA 94305–2022
Tel.: (650) 320–7700; Fax: (650) 320–7701

RONALD F. LOPEZ, CA Bar No. 111756
rflopez@nixonpeabody.com
SUSHILA CHANANA, CA Bar No. 254100
schanana@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, CA 94111–3600
Tel.: (415) 984–8200; Fax: (415) 984–8300

*Attorneys for Defendants-Counterclaim Plaintiffs TECHNOLOGY PROPERTIES LIMITED, and ALLIACENSE LIMITED.*

CHARLES T. HOGE, CA Bar No. 110696,
choge@knlh.com
KIRBY NOONAN LANCE & HOGE
350 Tenth Avenue, Suite 1300
San Diego, CA 92101
Tel.: (619) 231–8666; Fax: (619) 231–9593

*Attorney for Defendant-Counterclaim Plaintiff PATRIOT SCIENTIFIC CORPORATION*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HTC CORPORATION and HTC AMERICA, INC.,

Plaintiffs-Counterclaim Defendants,

vs.

TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, and ALLIACENSE LIMITED,

Defendants-Counterclaim Plaintiffs,

**Case No. 08-cv-00882 JF**

**DEFENDANTS' OPPOSITION TO HTC'S MOTION TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF THE PATENTS-IN-SUIT**

Date: June 12, 2009
Time: 9:00 a.m.
Dept.: Courtroom 3, 5th Floor
Before: The Honorable Jeremy Fogel

# TABLE OF CONTENTS

**Page**

I INTRODUCTION ........ 1

II STATEMENT OF FACTS ........ 2

III ARGUMENT ........ 3

A. Standard for a Motion to Stay Proceedings ........ 3

B. HTC has not met its Burden for a Motion to Stay Proceedings ........ 4

1. A Stay should be Denied Because an Indefinite Stay will Prejudice TPL Because it will Prevent TPL from Receiving a Timely Enforcement of its Patent Rights, Interfere with TPL's Licensing Program, and Allow HTC to Continue its Infringement of TPL's Patents ........ 4

2. A Stay Should be Denied Because Entry of a Stay will Not Simplify the Issues in this Suit Because the Reexamination Outcomes will Not Resolve all of the Issues and are Speculative. Further, HTC Could have Filed its Motion and Reexamination Request Before, but did Not, and Plaintiffs' Delay Tactics Should Not be Condoned. Further, a Stay will Allow HTC to Unfairly Make its Case Twice. ........ 7

3. A Stay Should be Denied Because In Addition to the Parties Being Far Along in Claim Construction, Over the Last Almost 15 Months the Parties Have Engaged in Extensive Discovery and Motion Practice in Reliance on Joint Schedules and the Patent Local Rules, Exemplifying that this Litigation is Well Advanced. ........ 11

IV CONCLUSION ........ 15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acer, Inc. v. Technology Properties Limited, et al,* Case No. 08-cv-00877 (N. D. Cal.) .......... 12, 15

*Affinity Labs of Texas, LLC v. Dice Electronics, et al.,* No. 9:08-CV-163 (E.D. Tex. Feb. 20, 2009) .......... 10

*Barco NV v. Patriot Scientific Corporation et al.* .......... 13 Case No., 08-cv-05398 (N. D. Cal.).

*Bartex Research, LLC v. Fedex Corp.,* No. 6:07-CV-385, 2009 U.S. Dist. LEXIS (E.D. Tex. 2009) .......... 5

*Boston Sci. Corp. v. Micrus Corp.,* 2006 U.S. Dist. LEXIS 16147 .......... 5, 8, 14

*CMAX v. Hall,* 300 F.2d 265 (9th Cir. 1962) .......... 4

*Engineered Data Prods., Inc. v. GBS Corp.,* 506 F.Supp. 2d 461 (D. Colo. 2007) .......... 9

*Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed. Cir. 1988) .......... 4

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,* No. C 03-1431 SBA, 2007 U.S. Dist. LEXIS 44107 (N.D. Cal. 2007) .......... 6, 7, 8

*Fujitsu Ltd. v. Nanya Tech. Corp.,* No. C 06-6613 CW, 2007 U.S. Dist. LEXIS 83581 .......... 4, 9, 10, 12

*In re Bass,* 314 F.3d 575 (Fed. Cir. 2002) .......... 7

*Landis v. North American Co.,* 299 U.S. 248 (1936) .......... 4

*Network Appliance, Inc. v. Sun Microsystems, Inc.,* 2008 U.S. Dist. LEXIS 76717 (N.D. Cal. 2008) .......... 9

*Sorensen v. Lexar Media, Inc.,* No. C 08-00095 JW, 2008 U.S. Dist. LEXIS 87511 .......... 3, 5, 14

*Soverain Software LLC v. Amazon.Com, Inc.,* 356 F. Supp. 2d 660 (E.D. Tex. 2005) .......... 8

*Telemac Corp. v. Teledigital, Inc.*,
450 F. Supp. 2d 1107 .......... 2, 3, 10

*Tokuyama Corp. v. Vision Dynamics, LLC*,
No. C 08-2781SBA, 2008 U.S. Dist. LEXIS 82732 (N.D. Cal. 2008) .......... 10

*Viskase Corp. v. American Nat. Can Co.*,
261 F.3d 1316 (Fed. Cir. 2001) .......... 4, 8

*Whatley v. Nike, Inc.*,
2000 U.S. Dist. LEXIS 5815 (D. Or. 2000) .......... 14

**OTHER AUTHORITIES**

Rule 26(a) .......... 3

Rule 26(f) .......... 3

# I INTRODUCTION

The motion of plaintiffs HTC Corporation and HTC America, Inc. (collectively, HTC or Plaintiffs) for an order staying all proceedings pending reexamination of the patents-in-suit[1] ("Motion to Stay") should be denied. First, a stay now would be inequitable to defendant TPL because HTC could have brought its Motion to Stay much sooner. This litigation is well advanced, and TPL has engaged in extensive litigation activities in reliance on the parties' numerous Joint Case Management Schedules, the Court's March 2, 2009 Case Management Order, and the Patent Local Rules. This Motion to Stay represents HTC's latest effort to delay TPL's ability to vindicate its patent rights and force TPL to incur substantial legal costs by first defending its patents in the PTO and then subsequently in court. The parties have invested significant resources in exchanging infringement and invalidity contentions, written discovery, document production, and claim construction positions. A stay will merely waste those resources and stall the progress that has occurred thus far in litigation.

Second, delaying this action will prevent TPL from receiving a timely enforcement of its patent rights, all for a speculative outcome. The reexamination, including appeals, may take over four years. In the meantime, the lapse of time could result in loss of evidence and disruption of TPL's licensing negotiations. Moreover, any delay caused by a stay will allow HTC to continue to infringe on TPL's patents and products.

Third, as evidenced by HTC's delay in filing the motion to stay, this motion is merely a delaying tactic. Because all the pending reexaminations are conducted on an *ex parte* basis, HTC has nothing to lose as a result of staying the litigation. Thus, even after a lengthy reexamination process, HTC is free to re-litigate the same or similar invalidity arguments in court should the MMP patents reissue from reexamination as expected, thereby unfairly allowing HTC to receive two opportunities to make its case.

---

[1] U.S. Patent Nos. 5,809,336, 5,784,584, 5,440,749, 6,598,148, and 5,530,890.

The decision to grant or deny this stay is discretionary. *See e.g., Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1110 – 1111 (N.D. Cal. 2006). TPL respectfully requests that the Court deny the Motion to Stay on grounds of fairness and equity..

## II STATEMENT OF FACTS

In October 2005, TPL filed suit in the Eastern District of Texas against several Japanese computer manufacturers and sellers, asserting that these Japanese companies infringed three of the MMP patents. In September 2006, one of the Texas defendants, NEC Electronics America, filed petitions requesting the PTO to conduct *ex parte* reexaminations on three MMP U.S. Patent Nos. 5,809,336 ("the '336 patent"), 6,598,148 ("the '148 patent"), and 5,784,584 ("the '584 patent"). Decl. S. Chanana Ex.. A [90/008,237 application]; Ex. B [90/008,227 application]; and Ex. C [90/008,225 application]. Less than one month later, on October 19, 2006, another Texas defendant, Toshiba Corporation, filed two additional petitions seeking *ex parte* reexaminations of the same '336 and '584 patents. *Id*. Ex.. D [90/008,306 application] & E [90/008,299 application]. Two months later, on January 30, 2007, a third-party requestor filed a third petition to have the '336 patent reexamined. *Id.* Ex.. F [90/008,474 application]. Notably, the Texas defendants never moved for a stay despite pursuing both litigation and the various *ex parte* reexamination challenges. The parties settled this litigation by December 2007, but the reexamination proceedings continued.

Rather than wait for the PTO to finish the pending reexamination proceedings, HTC coordinated with Acer and Asustek, and elected to file this declaratory judgment action over 15 months ago on February 8, 2008, unilaterally terminating licensing negotiations with TPL that had been ongoing since 2006. Three days later, unlikely coincidentally, HTC's chip supplier ARM Inc., another Texas defendant, filed a request for *ex parte* reexamination of U.S. Patent No. 5,440,749 ("the '749 patent"). *Id.* Ex. G [90/009,034 application].

Subsequently, an onslaught of *ex parte* requests for reexaminations of the MMP patents were filed in 2009. On January 16, 2009, an unnamed third party filed a petition for *ex parte* reexamination of the '749 patent. Decl. S. Chanana, Ex. H [09/009,389 application]. That same day, another third party filed its petition for an *ex parte* reexamination of U.S. Patent No.

5,530,890 (“the ‘890 patent”). Decl. S. Chanana, Ex. I [90/009,388 application]. On April 4, 2009, yet another unnamed third party filed a petition for *ex parte* reexamination of the ‘336 patent. *Id.* Ex. J [90/009,457 application]. Finally, on April 30, 2009, close to 15 months after HTC, Acer, and Asustek filed their suits against TPL, HTC finally filed its petition for an *ex parte* reexamination of the ‘749 patent. Decl. T. Lam, Docket No. 110-10, Ex. I-2. Decl. S. Chanana, Ex. K. All eleven of the reexamination proceedings are still pending before the PTO. After waiting nearly three years since the first reexamination petitions were filed and almost 15 months after the initiation of these declaratory judgment suits, HTC filed its motion for a stay pending the reexamination. Finally, on December 1, 2008, Barco, N.V., filed a declaratory judgment suit against TPL, and on December 18, 2008, this Court granted Barco’s request to administratively relate this suit with the ones filed by Acer, HTC, and ASUSTeK. Docket No. 21 in Case No. 08-CV-05398.

The parties participated in the Rule 26(f) conference almost a year ago on July 16, 2008. The Initial Case Management Conference in this case occurred on August 1, 2008. The parties shared their respective Rule 26(a) Initial Disclosures on November 21, 2008. Since then the parties have complied with a long list of Patent Local Rules (P.L.R.), up to and including P.L.R. 4-2, which included the exchanging of Preliminary Claim Constructions and Extrinsic Evidence on May 18, 2009. The Joint Claim Construction and Prehearing Statement is due June 12, 2009. Claim construction discovery is to end on July 13, 2009. Additionally, the parties have taken part in extensive written discovery through the use of interrogatories, document requests, and subpoenas.

## III ARGUMENT

### A. Standard for a Motion to Stay Proceedings

Courts have consistently recognized that a court is **not** required to stay judicial resolution pending a reexamination. *See Telemac* at 1110 – 1111 (N.D. Cal. 2006); *see also Sorensen v. Lexar Media, Inc.*, No. C 08-00095 JW, 2008 U.S. Dist. LEXIS 87511 at * 2 - *3 (N.D. Cal. 2008) (*quoting Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001);

*see also Fujitsu Ltd. v. Nanya Tech. Corp.*, No. C 06-6613 CW, 2007 U.S. Dist. LEXIS 83581 at * 6 - *7 (N.D. Cal. 2007). Additionally, courts have the "inherent power to manage their [own] dockets," and determining whether a stay is proper is within the district court's discretion. *Telemac* at 1110 – 1111 (*quoting Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)); *see also Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). Furthermore, in exercising its discretion, courts must consider the competing interests of the parties in determining whether a stay will be of significant benefit so as to justify further delay. *CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Landis*, 299 U.S. at 254-55.

In determining whether a stay is appropriate pending reexamination, a district court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Telemac* at 1111. HTC's Motion to Stay should be denied based on these three factors.

**B. <u>HTC has not met its Burden for a Motion to Stay Proceedings</u>**

**1. A Stay should be Denied Because an Indefinite Stay will Prejudice TPL Because it will Prevent TPL from Receiving a Timely Enforcement of its Patent Rights, Interfere with TPL's Licensing Program, and Allow HTC to Continue its Infringement of TPL's Patents**

Plaintiffs' argument that a stay would not harm Defendants (and would even "benefit" Defendants) is wholly incorrect. HTC Motion at 8:9. Actually, TPL will be harmed if the Court grants a stay because the delay resulting from a stay will (a) permit continued infringement of TPL's patents by HTC; (b) adversely impact TPL's negotiations with other potential licensees who will see TPL stalled in indefinite litigation with HTC, resulting in irreparable monetary and non-monetary (e.g., reputation) harm; and (c) prejudice TPL from obtaining a timely enforcement of its patent rights because a stay could potentially last over four years.

HTC's failure to address the substantial amount of delay that will result from staying this case in its Motion is telling. According to HTC's own exhibit (Docket No. 112), the average time for reexamination of a patent is 24.9 months (from filing date to certificate issue date). Once

appeals to the Board of Patent Appeals and Interferences and the Federal Circuit are considered, another 15.3 months on average must also be added to this time.[2] Once the stay is lifted, the parties will take several months to complete discovery and prepare for trial. Thus, a stay would likely postpone any adjudication of HTC's infringement and damage obligation for over 4 years.

This exorbitant amount of delay is unequivocally prejudicial toward TPL. *See Sorensen* at *3 (denying a stay pending reexamination and noting, **"**Appeals create potential for the [reexamination] process to take even longer. In that time, the Court could make substantial progress in interpreting the patent at issue and otherwise moving the action toward resolution."); *Boston Sci. Corp. v. Micrus Corp.*, 2006 U.S. Dist. LEXIS 16147 at *6 - *7 (N.D. Cal. 2006) (denying motion to stay and noting, "A substantial amount of work can be accomplished prior to the final resolution of the USPTO reexam.").

Additionally, litigation that extends over numerous years can serve as an impediment to Defendants' licensing program. As a licensing company, a significant part of Alliacense's business involves the licensing of the technology in the MMP portfolio. Alliacense is in active discussions with companies in various industries regarding their participation in the MMP Portfolio licensing program. Potential licensees may be deterred from negotiating with Defendants pending disposition of the present action, which could lead to monetary and non-monetary (e.g., business reputation) harm. Thus, delaying this dispute for years will greatly prejudice TPL. *See e.g., Bartex Research, LLC v. Fedex Corp.*, No. 6:07-CV-385, 2009 U.S. Dist. LEXIS at *11 (E.D. Tex. 2009) (finding that a stay may create irreparable harm to a non-practicing patent holder that monetary damages alone cannot remedy, and recognizing that "the right to exclude, even for a non-practicing entity, may be the only way to fully vindicate the patentee's ownership in the patent.").

HTC's argument that TPL will not be prejudiced by a stay because TPL retains the ability to collect monetary damages for infringement after the stay is misplaced, as is its assertion that

---

[2] According to the USPTO, the pendency of decided appeals from Appeal number assignment date to decision date is 6.5 months (average of first two quarters in 2009). *See* Decl. of S. Chanana, Ex. M. According to Federal Circuit statistics for 2008, the median time from docketing date to disposition date in the Federal Circuit for cases on appeal from the PTO was 8.9 months. Id., Ex. N.

TPL is not entitled to injunctive relief. HTC's Motion at 8: 4 – 28. TPL, through its Intellasys affiliate, has sold products that embody some or all of patents-in-suit, and HTC's continued infringement has prejudicially harmed TPL's ability to compete. A stay would allow HTC to continue using microprocessors that infringe TPL's patents for the next few years and deprive TPL of its right to exclude. In fact, in denying an accused infringer's request for a stay, this court has "recognized that the reexamination process may be lengthy, often taking years to run its course, and in the meantime, [the accused infringer] will be free to market and sell its purportedly infringing technology unfettered." *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2007 U.S. Dist. LEXIS 44107 at *18 (N.D. Cal. 2007). Thus, TPL is entitled to injunctive relief and monetary damages received after an indefinite stay will not adequately compensate TPL, resulting in prejudice to TPL.

If HTC truly wanted to see the PTO determine the validity of the patents-in-suit, it could have waited for the six pending *ex parte* reexaminations to finish instead of filing suit against TPL in February 2008. Instead, HTC chose to file its declaratory judgment suit against TPL, and TPL must be given the opportunity to vindicate its patent rights in court without delay.

To this point, HTC incorrectly claims that TPL is in "no hurry" to resolve the current dispute because "TPL first asked HTC to license the patents-in-suit in 2005, but did not cause this action to be brought until 2008." HTC's Motion at 9: 2 – 3. This assertion is blatantly deceptive and inaccurate. First, HTC fails to point out that TPL has engaged in protracted licensing discussions with HTC, commencing in November 2006. During the course of these discussions, TPL provided HTC with detailed claim charts demonstrating infringement of multiple claims of multiple patents by multiple HTC products. TPL has repeatedly visited Taiwan and made itself available to answer any questions HTC may have had concerning infringement and/or validity. Second, in February 2008, HTC coordinated with two other Taiwanese companies (Acer and Asus) and abruptly filed declaratory judgment actions against TPL. Thus, what TPL characterizes as a three-year delay between 2005 – 2008 is actually a two-year attempt by TPL to negotiate a licensing agreement with HTC, which was prematurely brought to a halt when HTC

(not TPL) "cause[d] this action to be brought" by filing the present declaratory judgment action. TPL's good faith and business common sense in first attempting to negotiate a licensing agreement with HTC before being forced to defend itself in this lawsuit should not be misconstrued as TPL wanting to delay this action. To the contrary, TPL wishes to resolve the issues raised in this action so as to prevent further infringement by HTC and to avoid disrupting on-going licensing negotiations with other companies.

A lengthy delay will put Defendants at a clear tactical disadvantage. Given that any reexamination proceedings could potentially last over four years, resulting in a delay and harm that will affect TPL's patent-enforcement rights, evidence, and license negotiations, the first prejudicial factor weighs heavily against a stay.

**2. A Stay Should be Denied Because Entry of a Stay will Not Simplify the Issues in this Suit Because the Reexamination Outcomes will Not Resolve all of the Issues and are Speculative. Further, HTC Could have Filed its Motion and Reexamination Request Before, but did Not, and Plaintiffs' Delay Tactics Should Not be Condoned. Further, a Stay will Allow HTC to Unfairly Make its Case Twice.**

HTC claims that the outcome of the pending reexaminations of the patents-in-suit will simplify the issues in question and trial of the case. HTC Motion at 6: 3 – 4. This is inaccurate and speculative. The outcome of the eleven pending reexaminations is unclear because they are at various stages in the proceedings, and it is highly unlikely that these reexaminations will either be resolved soon or serve to simplify the issues for this case. In two of the pending reexaminations, the third parties have simply filed a request for *ex parte* reexamination, which the PTO has not even ruled upon. *See* Decl. S. Chanana, Ex.. J [90/009,457 application] & Decl. T. Lam, Docket No. 110-10, Ex. I-2. For two other pending reexaminations, the PTO has done nothing more than grant the requests for reexamination – which is hardly surprising since the PTO grants 92% of these requests. *See* Decl. S. Chanana, Ex. I [90/009,388 application]; H [90/009,389 application]; *see also* Decl. T. Lam, Docket No. 112, Ex. Q. In yet another two of the pending reexaminations, the PTO has issued non-final office actions, and as the Federal Circuit and this Court have both recognized, "the PTO is free to reconsider its initial determinations prior to issuing a reexamination certificate." *Fresenius* at *14 (*citing In re Bass*,

314 F.3d 575, 577 (Fed. Cir. 2002)); *see also* Decl. S. Chanana Exs. G [90/009,034 application] & B [90/008,227 application].[3]

HTC essentially requests that this Court delay this litigation indefinitely based on speculations about reexaminations that may take years to resolve. Reexaminations are constantly filed, and patent owners cannot control when or who will file them. If HTC's argument were to be taken to its logical conclusion, this case may literally be stayed indefinitely if future reexamination requests are filed in any one of the 5 patents-in-suit. Such a result is incongruous. *See Fresenius* at*10-*11 (N.D. Cal. 2007) ("[A] court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze . . . [t]here is no per se rule that patent cases should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation. *Soverain Software LLC v. Amazon.Com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)."); *see also Boston Sci. Corp.* at *6-*7 (denying stay); see *also Viskase* (same).

Furthermore, the chances of confirming all claims is higher than cancelling all claims (25% versus 11%, respectively; HTC Motion to Stay, Ex. Q), so it is possible that after waiting over 4 years for the reexamination process to finish, the parties may find themselves in the exact position they are today, except that they will risk fading witness memories and loss of evidence.[4] *See e.g.*, *Fujitsu* at * 9 (citing witness unavailability, memory loss, and loss of evidence as reasons for denying stay). Second, even if the more likely result of the claims being changed/amended occurs (64% chance, HTC Motion to Stay, Ex. Q), there is a strong probability that HTC will infringe on any amended claim as well as the original claims. The parties just do not know the reexamination results, nor should they play such guessing games. HTC's

---

[3] For the two pending reexaminations of the '584 patent, the PTO has already issued a Notice of Intent to Issue a Reexamination Certificate and has forwarded the '584 patent to the Office of Publication. These two reexaminations should conclude shortly. Decl. S. Chanana, Exs.C [90/008,225 application] & E [90/008,299 application]. With regard to the "final rejections" in three of the pending reexaminations on the '336 patent, TPL has subsequently met with the examiner, and the examiner agreed with several of TPL's arguments regarding the validity of the '336 patent as part of the ongoing reexaminations.

[4] The matter is already simplified without a stay because pursuant to P.L.R. 4-1, TPL will ask the Court to adopt Judge Ward's June 15, 2007 Memorandum Opinion and Order in case no. 2:05-cv-494 (E.D. Texas), construing the terms from U.S. Patent Nos. 5,809,336 and 6,598,148.

predictions about whether the issues will be simplified are speculative at best, and such speculation does not warrant indefinitely delaying this case given the tremendous amount of time and money that has already been spent in litigation.

Even if the Court were inclined to stay the case until reexaminations are finally concluded, the *ex parte* reexaminations would still not resolve all the issues pending in this case. Asserted claims 6, 11, and 13 of the '148 patent have not been put into reexamination. Decl. S. Chanana, Ex. O. *See Network Appliance, Inc. v. Sun Microsystems, Inc.*, 2008 U.S. Dist. LEXIS 76717 at *13 (N.D. Cal. 2008) (denying motion to stay patent because the PTO granted request to reexamine only some of the asserted claims). At a minimum, the parties will have to litigate whether HTC's products infringe the '148 patent regardless of the pending reexaminations. In addition, HTC has also pled defenses related to lack of standing, laches, estoppel, and failure to mark. None of these issues would be resolved or simplified by a stay in this case.[5]

Additionally, this Court should deny HTC's motion to stay the case in light of HTC's delay tactics. Even though HTC could have filed a motion to stay and/or reexamination request before, it did not. Given that six reexaminations were pending when HTC filed this suit in February, 2008, HTC could have waited to see what transpired at the PTO on those reexaminations or immediately sought a stay after filing suit. HTC did neither. At the very least,

HTC could have sought a motion to stay and/or reexamination request soon after the first reexamination for the '749 patent was granted post-filing of this lawsuit on June 3, 2008 (Decl. S. Chanana, Ex. L). However, HTC instead filed its reexamination over 10 months later on until April 30, 2009, conveniently one day before it filed this Motion to Stay. Decl. T. Lam, Docket No. 110-10, Ex. I-2.

---

[5] HTC's assertion that it is entitled to relief under the intervening rights doctrine is speculative at best, because the parties would still have to litigate whether any reissued claims were substantially identical to the original claims. *Engineered Data Prods., Inc. v. GBS Corp.*, 506 F.Supp. 2d 461, 473 (D. Colo. 2007). Such speculation is hardly the basis for a stay.

HTC's attempt to "derail [this] litigation" is clearly apparent from its decision to file a reexamination of the '749 patent at the eleventh hour, a day before it filed its Motion to Stay, so as to "rack up" another superficial reason for staying the case. Such antics should not be excused. *See e.g., Fujitsu at** 9 - *10 (denying stay and noting, "Nanya could have filed its requests for re-examination with the PTO at an early point in this litigation. Instead, it waited until ***nine months*** after initiating the [ ] action . . . and after hundreds of thousands of documents had been produced. Nanya should not succeed in obtaining a tactical advantage over Fujitsu by continuing to delay these proceedings.") (emphasis added); *see also Tokuyama Corp. v. Vision Dynamics, LLC*, No. C 08-2781SBA, 2008 U.S. Dist. LEXIS 82732 at * 7 (N.D. Cal. 2008) (denying stay and reprimanding the moving party by noting, "[the moving party was] apparently aware of the prior art references on which it principally relies in reexamination at that time, but did not request reexamination in the PTO until after this action was filed."); *see Telemac* at 1111 (denying stay, in part, because request was filed 18 months after the filing of the complaint).

HTC's delaying tactics are further exemplified by the fact that it filed an *ex parte* reexamination request, which means that it is not bound by any '749 reexamination decision adverse to HTC's interests. This is quite convenient for HTC because it also means that, assuming a stay is granted here, HTC can ignore any adverse PTO decision and essentially make the same invalidity arguments again when this case resumes in potentially over 4 years as it made to the PTO. If this absurd result plays out, HTC will be able to rely on exactly the same invalidity references in future litigation as in its present '749 reexamination request. *See e.g., Affinity Labs of Texas, LLC v. Dice Electronics, et al.*, No. 9:08-CV-163 (E.D. Tex. Feb. 20, 2009) at pg. 6 (denying a motion to stay and noting, "A third party requester in an *ex parte* reexamination is not precluded from raising the same issues in a subsequent litigation between itself and the patent owner."), Decl. S. Chanana, Ex. P. Consequently, HTC will unfairly be allowed **two** chances to hedge its bets. This is beyond forum-shopping between the PTO and this Court. It is a delaying tactic, and the Court should not condone it.

Signs of HTC potentially attempting to get "two bites at the apple" are already apparent. HTC submitted drastically less prior art references in its request for reexamination of the '749 patent than it did with its invalidity contentions for the '749 patent. HTC's reexamination request lists only 9 prior art references, while its invalidity contentions unleash a mountain of prior art references (well over a hundred). *See* Decl. T. Lam, Docket No. 112, Ex. Q and Decl. S. Chanana, Ex. T. The logical conclusion of this strategic approach is that HTC is positioning itself to first see if it can invalidate the '749 patent through the PTO, and if that fails, it will later make the argument that the PTO did not have all of the relevant prior art references so any adverse PTO decision should be ignored. Subsequently, HTC may attempt to rely on the larger number of prior art references found in its invalidity contentions to litigate the present action years from now. Such gamesmanship should not be tolerated.

In light of HTC's delay tactics and the speculative nature of the outcome and time of the reexamination period, the second simplification factor weighs against a stay.

**3. A Stay Should be Denied Because In Addition to the Parties Being Far Along in Claim Construction, Over the Last Almost 15 Months the Parties Have Engaged in Extensive Discovery and Motion Practice in Reliance on Joint Schedules and the Patent Local Rules, Exemplifying that this Litigation is Well Advanced**

HTC's allegations that this action is still in its early stage is highly inaccurate. HTC Motion, 9:7- 28; 10: 1-11. This case did not begin "in earnest only three months ago," as HTC claims. *Id*, 9:8-9. Rather, this case began almost 15 months ago on February 8, 2008. Since then the Court has issued numerous Orders, addressing topics such as, but not limited to, a schedule for complying with the Local Patent Rules, directions on cost responsibilities for Taiwanese deponents, access to confidential product reports, and motions to dismiss and transfer. Furthermore, the parties have participated in the following discovery efforts:

- On December 15, 2008, HTC served its first set of interrogatories on TPL. TPL served its responses on or about March 10, 2009.

- On December 15, 2008, HTC served its first set of request for production of documents to TPL. On or about March 3, 2009, TPL produced documents in response.
- On or about February 20, 2009, TPL served its first set of requests for production of documents on HTC.
- On or about March 5, 2009, TPL served its first set of interrogatories on HTC. HTC served its responses on April 20, 2009.

In response to document requests, the parties have searched for, reviewed, and produced over 90,000 pages of documents. See Decl. S. Chanana, ¶ 22.

Additionally, the parties have participated in the following activities in compliance with the Local Patent Rules:

- On December 5, 2008, TPL served its Disclosures of Asserted Claims and Preliminary Infringement Contentions (and supporting technical documents and reverse engineering reports), pursuant to L.P.R. 3-1 and 3-2.
- On April 6, 2009, HTC served its Invalidity Contentions, totaling 167 pages and accompanied by over 140 prior art references, pursuant to L.P.R. 3-3 and 3-4.
- On April 20, 2009, the parties exchanged their respective lists of Proposed Terms and Claim Elements for Construction, pursuant to L.P.R. 4-1.
- On May 18, 2009, the parties exchanged their respective Preliminary Claim Constructions and Extrinsic Evidence, pursuant to L.P.R. 4-2.

The substantial amount of time spent in complying with the Local Patent Rules by both parties, including searching for, analyzing, and producing documents, is not an insignificant task, and further shows how far along the parties have come in the litigation. *See e.g., Fujitsu Ltd.* at *8 (denying the stay pending reexamination and noting that one of the reasons the case was in advanced discovery proceeding was because "[T]he parties [ ] also exchanged material on claim construction and their contentions of infringement and invalidity.")

In addition to engaging in numerous meet and confers with each other and conference calls with parties from the related cases,[6] HTC and TPL have prepared for and argued the following motions in front of the Court:

- Motion to Allow Disclosure of Defendants' Preliminary Infringement Contentions on April 14, 2009
- Motion for Reconsideration of the Court's Order Denying Motion to Dismiss, or in the Alternative, to Transfer Venue on January 30, 2009
- Motion to Compel the Depositions and Trial Testimony of Plaintiff HTC's Witnesses in This District on December 16, 2008
- Motion to Dismiss, Transfer, and/or Stay the Case on September 19, 2008

Preparation for each of these motions required extensive pre-litigation efforts (time, resources, and money) on behalf of both the parties and this Court. Due to the extensive nature of discovery, compliance with the Local Patent Rules, and motion practice the Court has also become very familiar with the patents-at-issue.[7]

As the long list of pre-litigation activities shows, to argue this litigation is in its "early" or infant stages is wholly inaccurate. Notwithstanding the fact that both parties have agreed to move this case along through discovery and trial for 2010,[8] HTC relies merely on the isolated fact that a definite trial date has not yet been set to charge forward with the argument that a stay is warranted. However, there are cases in which a stay was denied even though a trial date was not set. For example, in denying a stay despite the fact that discovery had not yet begun and a trial date had also not yet been set, a district court noted:

> A substantial amount of work can be accomplished prior to the final resolution of the USPTO reexam. The Court recognizes that the patents-in-suit share mutual inventors, identical specifications, and similar concepts, which weigh in favor of proceeding with coordinated and parallel discovery for the patents-in-suit. The

[6] *Acer, Inc. v. Technology Properties Limited, et al*, Case No. 08-cv-00877 (N. D. Cal.) and *Barco NV v. Patriot Scientific Corporation et al*., Case No., 08-cv-05398 (N. D. Cal.).

[7] Furthermore, Plaintiff Barco, N.V. in related case no. 08-CV-05398 has not moved for a stay of the proceedings. Staying the HTC action while the Barco case proceeds will lead to a waste of judicial resources and eliminate the efficiencies the Court sought by administratively relating the cases together.

[8] Docket Nos. 90 – 92.

> Court is confident, however, that the parties are capable of managing discovery in a manner that will avoid duplication and waste.

*Boston Sci. Corp. v. Micrus Corp.*, 2006 U.S. Dist. LEXIS 16147 (N.D. Cal. Mar. 21, 2006); *see also Whatley v. Nike, Inc.*, 2000 U.S. Dist. LEXIS 5815 (D. Or. 2000) (denying motion to stay pending reexamination despite not having a trial date set). In fact, some courts have denied stays in cases in much earlier stages than the present litigation. For example, in *Sorensen v. Lexar Media, Inc.*, the Court denied a motion to stay pending reexamination despite the parties not having a case schedule in place. 2008 U.S. Dist. LEXIS 87511 at *3 (N.D. Cal. 2008). HTC and TPL have been communicating about the patents-in-suit since 2006, so significant time has also been invested in this suit, further compelling the denial of a stay.

Just as a lack of a trial date did not prevent the *Sorensen* court from denying a stay because there were other factors to consider, so too this Court should not grant a stay because a trial date is not in place. To do so is to take too narrow of an approach and to ignore case law and other factors (i.e., prejudice and simplification, as discussed above). Furthermore, it is worth noting that, as delineated above, the parties in the present action are much further along in litigation and have done much more than the parties in *Sorensen*. The parties in the latter actions had not even participated in scheduling conferences. Whereas, here the parties have participated in numerous scheduling conferences and filed multiple Joint Case Management Schedules. Staying the case because a trial date has not yet been set trivializes the significant time and expense invested by both parties and this Court.

Additionally, the parties are also in the midst of the claim construction process. The parties have already devoted substantial resources in developing proposed claim constructions and exchanged those proposed constructions along with preliminary identifications of evidence. On the same day as the hearing on HTC's motion to stay (June 12, 2009), the parties in all three related cases will file a Joint Claim Construction and Prehearing Statement that identifies all the agreed-upon claim constructions, the additional terms proposed for construction, the respective constructions offered for those claim terms, and the intrinsic and extrinsic evidence offered in

support of each party's position.[9] Docket No. 128 in related *Acer* action. Preparation for this deadline further shows how far along the litigation has progressed.

After requesting and granting numerous discovery deadlines, participating on numerous calls with TPL's counsel, forcing TPL to defend itself in response to various HTC motions, Defendants are baffled that HTC can claim this litigation is still in its early stage. It is quite the contrary. Between the disclosures required by the Local Patent Rules and the Federal Civil Rules of Procedures, much of the discoverable information has been identified. Despite all of this, however, HTC claims that the parties have only completed "minimal discovery" because a protective order is not yet in place. HTC's Motion, 2:10 – 12. What HTC fails to point out is the time the parties spent over the course of months negotiating a protective order, a hearing on the issue, and a recent Order setting the due date for a protective order for June 15, 2009. Dkt No. 115. Furthermore, the parties are approaching and intensely preparing for another significant litigation milestone on July 13, 2009, when claim construction discovery closes.

Thus, in light of the fact that the parties have agreed to and are preparing for upcoming deadlines and a 2010 trial (Docket Nos. 90 – 92), and have spent substantial time, money and resources on discovery and motion practice, the factor considering the stage of litigation favors denial of a stay.

## IV **CONCLUSION**

For the foregoing reasons, HTC has not satisfied its burden to warrant a stay and accordingly, TPL respectfully requests that the Court deny HTC's Motion to Stay.

[9] In addition, three of five patents-in-suit have already been construed previously by Judge Ward in the Eastern District of Texas in a comprehensive 28-page opinion, and the parties will ask the Court to adopt most, if not all, of Judge Ward's constructions. Decl. S. Chanana, Exs. Q [Ward's Claim Construction]; R [HTC's P.L.R. 4.1 Proposed Constructions]; S [TPL's P.L.R. 4.1 Proposed Constructions].

DATED: May 22, 2009

Respectfully submitted,

NIXON PEABODY LLP

By: /s/Sushila Chanana

Robert E. Krebs
Ronald F. Lopez
Christopher L. Ogden
Sushila Chanana
NIXON PEABODY LLP
*Attorneys for Defendants-Counterclaim Plaintiffs TECHNOLOGY PROPERTIES LIMITED, and ALLIACENSE LIMITED*

Charles T. Hoge
KIRBY NOONAN LANCE & HOGE
*Attorney for Defendant-Counterclaimant PATRIOT SCIENTIFIC CORPORATION*