DESIGNATED FOR PUBLICATION

**E-Filed 6/7/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HTC CORPORATION and HTC AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>TECHNOLOGY PROPERTIES LIMITED, PATRIOTIC SCIENTIFIC CORPORATION and ALLIACENSE LIMITED,<br><br>Defendants. | Case Number C 08-00882 (HRL)<br><br>*Related to Case No.* C-08-00877 JF<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR ORDER PROHIBITING DANIEL LECKRONE FROM CONTACTING HTC EMPLOYEES |

## I. BACKGROUND

In February 2008, HTC Corporation and HTC America Inc. (collectively, "HTC") filed the instant action seeking declaratory relief against Technology Properties Limited ("TPL"). Daniel Leckrone co-founded TPL in 1988 and serves as its Chairman. Leckrone also is an attorney licensed to practice law in California. While he is a member of the State Bar of California, Leckrone has never served as counsel of record or represented TPL in any legal capacity in this action. Declaration of Daniel Leckrone ¶¶ 2, 3, 7. As Chairman of TPL, Leckrone has final authority with respect to all settlements of litigation and directs business

strategy for TPL.  *Id.* ¶ 9.

Since the commencement of this action, Leckrone has communicated on TPL's behalf directly with HTC's upper management.  The purpose of this communication appears to be to convince HTC's principals to enter into a settlement agreement rather than continuing to litigate. Declaration of Kyle Chen, Ex A (December 2008 Letter from Leckrone to HTC's Chairman, Cher Wang, suggesting that "communication through lawyers is not usually very productive"); *id.,* Ex. B (February 10, 2009 Memorandum from Daniel Leckrone addressed to Mac Leckrone and Mike Davis, President and Senior Vice President of Sales for Alliacense Ltd., respectively, which then was sent to Wang, stating that Leckrone "suspect[s] that HTC Management has been misled by HTC attorneys regarding recent events related to the transfer of the case to Texas and accordingly, several facts need to be made very clear to HTC decision makers" including that "Judge Fogel's decision to retain the case in California creates the best of several worlds for TPL"); *id.,* Ex. C. (February 27, 2009 letter from Leckrone to Wang contending that the cost of litigation and the Court's indication of deference to Judge Ward's Markman ruling favor HTC joining the MMP Licensing Program at a specified rate); Exs. F and G (two letters sent in March 2010 by Leckrone to HTC's Chief Executive Officer ("CEO"), Peter Chou, offering a business proposal with respect to the instant litigation and the MMP portfolio).

In directly contacting employees of HTC, Leckrone disregarded the express request of HTC's counsel that he not do so.  *Id.,* Ex. D (March 12, 2009 letter from HTC's outside counsel to TPL's outside counsel reflecting its knowledge of Leckrone's direct communication with HTC's management and requesting that Leckrone "cease and desist communicating with Ms. Wang in violation of his ethical obligations as an attorney" pursuant to Rule 2-100), Ex. H (Email from HTC's outside counsel to TPL's outside counsel confirming TPL's indication that Leckrone declined to stop contacting HTC's executives despite HTC's outside counsel's request).  TPL has asserted consistently that Leckrone's direct communication with HTC's upper management qualifies as proper principal-to-principal communication.  *Id.,* Ex. I (March 24, 2010 letter from TPL's outside counsel to HTC's outside counsel); *see also id.*, Ex. E (March 16, 2010 letter from Leckrone to Wang contesting the impropriety of his direct communication and

2

Case Number C 08-00882 (HRL)
Related to Case No. C-08-00877 JF
ORDER DENYING PLAINTIFF'S MOTION FOR ORDER PROHIBITING DANIEL LECKRONE FROM CONTACTING HTC EMPLOYEES
(JFLC1)

reasserting his position that the progress of the litigation would favor TPL and that HTC would be served best by joining the MMP Licensing Program and ceasing to pursue litigation).

On April 19, 2010, HTC filed the instant motion seeking an order prohibiting Leckrone from contacting HTC employees. TPL opposes the motion. The Court has considered the moving and responding papers and the oral arguments of counsel presented at the hearing on May 28, 2010. For the reasons discussed below, the motion will be denied.

## II. LEGAL STANDARD

California's Rules of Professional Conduct govern the scope of proper and improper communication between an attorney and the employees of a represented party in the concerned litigation. California Rule of Professional Conduct 2-100 states:

> (A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer.
>
> (B) For purposes of this rule, a "party" includes:
>
>> (1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership; or
>>
>> (2) An association member or an employee of an association, corporation, or partnership, if the subject of the communication is any act or omission of such person in connection with the matter which may be binding upon or imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.
>
> (C) This rule shall not prohibit:
>
>> (1) Communications with a public officer, board, committee, or body; or
>>
>> (2) Communications initiated by a party seeking advice or representation from an independent lawyer of the party's choice; or
>>
>> (3) Communications otherwise authorized by law.

Cal. Prof. Conduct Rule 2-100.

"In determining the applicability of Rule 2-100, we must be mindful of the fundamental reasons behind the venerable rule in legal ethics prohibiting *ex parte* contacts with represented parties." *U.S. v. Talao*, 222 F.3d 1133, 1138 (9th Cir. 2000). "The rule exists in order to preserve the attorney client relationship and the proper functioning of the administration of

1  justice." *Id.* (citation and quotations marks omitted).  "It is a rule governing attorney conduct and
2  the duties of attorneys, and does not create a right in a party not to be contacted by opposing
3  counsel.  Its objective is to establish ethical standards that foster the internal integrity of and
4  public confidence in the judicial system." *Id.*

### III. DISCUSSION

**A. Applicability of Rule 2-100**

It is undisputed that Rule 2-100 prohibits a member of the State Bar of California, while representing a client, from communicating directly or indirectly about the subject of the representation with a party that the member knows to be represented by another lawyer in the matter.  Cal. Prof. Conduct Rule 2-100.  It is also undisputed that Leckrone, a member of the State Bar of California, has contacted HTC's Chairman and CEO since the inception of the present litigation despite knowing that HTC was represented by counsel who had not consented to such communication.  TPL opposes HTC's motion based upon its contention that Leckrone's behavior does not fall within the scope of Rule 2-100.

Pointing to the first clause of Rule 2-100,"[w]hile representing a client," TPL argues that because Leckrone has never represented TPL in any legal capacity in this action, his communication with HTC employees is not improper.  Leckrone Decl., ¶¶ 3-4, 7.  The Court agrees.  Opp. Mot. at 7 (asserting that "Mr. Leckrone has not appeared as counsel of record for TPL in this litigation, does not serve as a legal advisor to TPL, and does not hold any legal position within TPL."), citing *McMillan v. Shadow Ridge At Oak Park Homeowner's Ass'n*, 165 Cal.App.4th 960, 966 (2008) (citation and quotation marks omitted) ("The attorney of record has the exclusive right to appear in court for his client and neither the party himself nor another attorney should be recognized by the court in the conduct or disposition of the case."); *see also* ABA Disciplinary Rule 7-104(A)(1) (prohibiting communication between a lawyer and a party known to be represented "[d]uring the course of his representation of a client"); *see also* ABA Model Rule of Professional Conduct 4.2 (mandating that a lawyer, "[i]n representing a client...not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter...").  Leckrone is a business officer holding the

4

highest executive position at TPL and has final settlement authority with respect to any litigation concerning TPL.  That he also is a member of the State Bar of California does not transform his position in this litigation to that of an attorney representing a client within the meaning of Rule 2-100.  Significantly, TPL does not claim attorney-client privilege with respect to any of Leckrone's communications with TPL employees.[1]

TPL also contends that Leckrone's communication with HTC employees falls within the scope of expressly permitted communication between parties themselves.  Rule 2-100 "is not intended to prevent the parties themselves from communicating with respect to the subject matter of the representation...the rule does not prohibit a member who is also a party to a legal matter from directly or indirectly communicating on his or her own behalf with a represented party.  Such a member has independent rights as a party which should not be abrogated because of his or her professional status."  Cal. Prof. Conduct Rule 2-100 at Discussion.  HTC contends that Leckrone, despite being Chairman and CEO of TPL, is not a "party."  HTC relies in part upon *In re Discipline of Schaefer,* 117 Nev. 496 (Nev. 2001) in support of this position.  *Schaefer* holds that, "a lawyer principal who appears on behalf of his corporation is clearly acting in his capacity as a lawyer representing a client, not as a principal of the corporation."  *Id.* at 509.  However, unlike the attorney in *Schaefer*, Leckrone is not "appear[ing] on behalf of his corporation" as a lawyer, but rather in a business capacity as TPL's CEO and Chairman.  *Id.*

---

[1] Adopting HTC's position effectively would prevent persons licensed to practice law in California from serving as officers or directors in corporations and engaging in settlement conversations outside of the presence of counsel.  This is not the purpose of Rule 2-100.  Rule 2-100 aims to prevent a member of the State Bar of California *acting as an attorney and representing a client* from improperly contacting an opposing party that is represented by counsel.

HTC argues that if the Court denies the instant motion "any company or organization could circumvent Rule 2-100 by simply assigning a managerial title to an attorney representing such company or organization's interests to gain the ability to communicate directly with a represented opposing party without consent of its attorney."  Motion at 11.  While the Court acknowledges that a perversion of Rule 2-100 is possible, the present record does not establish such impropriety here.  Leckrone co-founded TPL in 1988 and has served as Chairman since its inception twenty-two years ago.  There is no evidence that Leckrone was assigned a managerial title as a subterfuge to gain access to HTC's management.

5

Case Number C 08-00882 (HRL)
Related to Case No. C-08-00877 JF
ORDER DENYING PLAINTIFF'S MOTION FOR ORDER PROHIBITING DANIEL LECKRONE FROM CONTACTING HTC EMPLOYEES
(JFLC1)

1    As argued by TPL, Rule 2-100 provides specifically that "party" includes "(1) An officer, director, or managing agent of a corporation or association, and a partner or managing agent of a partnership." Cal. Prof. Conduct Rule 2-100(B)(1). In *Snider v. Superior Court*, the court defined "managing agents" as "those employees that exercise substantial discretionary authority over decisions that determine organizational policy." 113 Cal.App.4th 1187, 1209 (2003). Leckrone meets this definition. Leckrone Decl. ¶ 4 (identifying Leckrone as the chairman of TPL and asserting that he "oversee[s] and direct[s] the corporate strategy for TPL.") Leckrone is an officer of the corporation and also falls squarely within the definition of a managing agent. *Snider*, 113 Cal.App.4th at 1208.

### B. Improper effect of attorney misconduct

The purpose of Rule 2-100 is to "preserve the attorney-client relationship from an opposing attorney's intrusion and interference." *Jackson v. Ingersoll-Rand Co.*, 42 Cal.App.4th 1163, 1167 (1996). "The court's goal is not to impose a *penalty*, as the propriety of punishment for violation of the Rules of Professional Conduct is a matter within the purview of the State Bar, not of a court presiding over the affected case. Instead, what the court must do is focus on identifying an appropriate remedy for whatever *improper effect* the attorney's misconduct may have had in the case before it." *McMillan*, 165 Cal.App.4th at 968 (emphasis in original), quoting *Myerchin v. Family Benefits, Inc.,* 162 Cal.App.4th 1526, 1538, 76 Cal.Rptr.3d 816 (2008).

Here, even if the Court were to determine that Leckrone's communications with HTC principals were improper, HTC has failed to demonstrate any improper effect. The record reflects that HTC has been represented in this litigation by two sophisticated international law firms, White & Case LLP and Cooley Godward LLP, as well as by in-house legal counsel. The record also reveals that HTC has consulted with and has received legal advice from its counsel regarding the substance of Leckrone's communications. Chen Decl., Exs. D and H. HTC argues that while Leckrone's communications to its employees have "not succeeded in [Leckrone's] mission to sow distrust and disrupt HTC's relationship with its counsel, his inflammatory communications with HTC have been insulting, harassing and disruptive to HTC's business."

6

Case Number C 08-00882 (HRL)
Related to Case No. C-08-00877 JF
ORDER DENYING PLAINTIFF'S MOTION FOR ORDER PROHIBITING DANIEL LECKRONE FROM CONTACTING HTC EMPLOYEES
(JFLC1)

1  Reply at 3.  Moreover, HTC argues that it would not have filed the instant motion if it had no
2  interest to protect.  *Id.*  However, despite this generalized argument in its reply, HTC presents no
3  evidence of any actual improper effect.  *McMillan*, 165 Cal.App.4th at 967-68 (citation and
4  internal quotation marks omitted) (holding that "[e]ven were the communication to be deemed
5  within the ambit of rule 2-100...nothing occurred in the conversations that would have any effect
6  on either the outcome of the litigation or on the way in which the litigation is going to proceed.")

## IV. ORDER

Good cause therefor appearing, Plaintiff's motion is DENIED.

**IT IS SO ORDERED.**

Dated: 6/7/10

_____
JEREMY FOGEL
United States District Judge