**\*\* E-filed January 12, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HTC CORP., et al.,<br><br>            Plaintiffs,<br>    v.<br><br>TECHNOLOGY PROPERTIES LTD., et al.,<br><br>            Defendants.<br>_____/ | No. C08-00882 JF (HRL)<br><br>**(1) ORDER DENYING DEFENDANTS' MOTION TO COMPEL INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS AND (2) INTERIM ORDER RE: PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 3 AND 4 AND RFP NOS. 3, 5, 6, AND 8-11**<br><br>**[Re: Docket Nos. 191, 197]** |

**BACKGROUND**

In February 2008, plaintiffs HTC Corporation and HTC America, Inc. (collectively, "HTC") filed this declaratory judgment action against defendants Technology Properties Ltd. ("TPL"), Patriot Scientific Corp. ("Patriot Scientific"), and Alliacense Ltd. ("Alliacense") (collectively, "Defendants"), alleging that certain of TPL's patents were not infringed and are invalid. Defendants filed counterclaims, alleging that certain of HTC's cellular phone products infringe TPL's patents.[1]

Discovery disputes have ensued, and both sides filed their own motions to compel, which are described in turn below.

---

[1] The four patents currently at issue are Nos. 5,809,336 (the "'336 Patent"); 5,440,749 (the "'749 Patent"); 6,598,148 (the "'148 Patent"); and 5,530,890 (the "'890 Patent").

**DISCUSSION**

A. <u>Defendants' Motion to Compel Interrogatory Responses and Production of Documents</u>

Defendants' filed a motion to compel HTC to provide responses to several of their interrogatories and requests for production of documents. Docket No. 191 ("Defendants' Motion").

1. <u>Interrogatory Nos. 1-8</u>

Defendants move to compel HTC to provide further responses to their Interrogatory Nos. 1-8. Defendants' Motion. Collectively, Defendants' Interrogatory Nos. 1-8 require HTC to "[s]tate all facts and evidence that support" or "contradict" HTC's assertions in the First Amended Complaint that "[n]o valid and enforceable claim" of the four patents-in-suit "is infringed by [HTC]." Docket No. 192 ("Mar Decl."), Ex. A at 3-4. Interrogatories of these types are frequently referred to as "contention interrogatories."[2]

While HTC has provided responses (including supplemental responses) to these contention interrogatories, Defendants believe they are not specific enough. And without more specific responses, Defendants contend that they "cannot be sure which HTC and third-party witnesses they must depose" or "determine which documents they should analyze for use in depositions." Defendants' Motion at 6. In short, they "cannot prepare for trial." <u>Id</u>.

HTC seems to acknowledge that its responses could be more specific, as it has offered to supplement its responses to these interrogatories 30 days after the filing of the parties' Joint Claim Construction and Pre-Hearing Statement (for which there is no deadline currently set), "with the understanding that HTC might need to further supplement in light of, e.g., the on-going discovery as well as Judge Fogel's future claim construction ruling." Docket No. 218 ("HTC Opp'n") at 3;

---

[2] <u>See</u> In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 332 (N.D. Cal. 1985) (As Magistrate Judge Brazil explained: "[T]he phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions. Some people would classify as a contention interrogatory any question that asks another party to indicate *what* it contends. Some people would define contention interrogatories as embracing only questions that ask another party *whether* it makes some specified contention. Interrogatories of this kind typically would begin with the phrase 'Do you contend that . . . .' Another kind of question that some people put in the category 'contention interrogatory' asks an opposing party to state all the *facts* on which it *bases* some specified contention. Yet another form of this category of interrogatory asks an opponent to state all the *evidence* on which it *bases* some specified contention. Some contention interrogatories ask the responding party to take a position, and then to explain or defend that position, with respect to *how the law applies to facts.* A variation on this theme involves interrogatories that ask parties to spell out the *legal basis* for, or theory behind, some specified contention.").

Docket No. 219 ("Chen Decl."), ¶ 3. The issue to decide, then, is not whether HTC should supplement its responses to Interrogatory Nos. 1-8, but when it should do so. Defendants rejected HTC's proposal because they think that HTC does not get to wait that long to supplement its responses. Citing Rule 26, Defendants argue that HTC is required to supplement its "incomplete" responses promptly. FED. R. CIV. P. 26(e)(1)(A). However, it is clear that a court has considerable discretion to order that a party does not need to answer a contention interrogatory until designated discovery is complete or at some other time. FED. R. CIV. P. 33(a)(2); In re eBay Seller Antitrust Litigation, No. C07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008); see also FED. R. CIV. P. 26(e)(1) (party must supplement or correct its discovery response "in a timely manner" or "as ordered by the court").

Rule 33 governs the use of contention interrogatories to discover the factual basis for allegations in a complaint. "Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken." In re eBay Seller Antitrust Litigation, No. C07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) (citing Tennison v. City & County of San Francisco, 226 F.R.D. 615, 618 (N.D. Cal. 2005)). "In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete." Id. (citing Fischer & Porter Co. v. Tolson, 143 F.R.D. 93, 95 (E.D. Pa. 1992); In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 332-38 (N.D. Cal. 1985)).

In this regard, HTC contends that providing more detailed responses to contention interrogatories at this stage in the action is inappropriate. In so arguing, HTC relies upon the oft-cited framework set forth by Magistrate Judge Brazil in In re Convergent Technologies Securities Litigation, 108 F.R.D. 328 (N.D. Cal. 1985) (hereinafter, "In re Convergent"). Under this framework, the party moving to compel responses to contention interrogatories at an early stage in the litigation must show that responses would "contribute meaningfully" to: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3) setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11 or Rule 56. Id. at 338-39. These guidelines are not to be applied rigidly, and so any decision must be made on a case by case basis. Id. at 337.

1    Defendants argue that Judge Brazil's framework, which was developed with respect to
2 contention interrogatories to be responded to before "substantial discovery has been completed
3 through other means," In re Convergence, 108 F.R.D. at 332, is inapposite because this case is not in
4 the early stages of the litigation. Defendants so far have produced 3.7 million pages of documents,
5 and two depositions have been completed and two more are scheduled.

6    While it is clear that discovery is underway, it is still very much ongoing and not near its
7 end, especially since, as HTC states, no party depositions have taken place, and no claim
8 construction hearing or discovery cut-off date has been set. In these circumstances, the Court finds
9 the In re Convergence framework useful. And in looking to that framework — and in light of the
10 reluctance of courts to require responses to contention interrogatories early in the litigation — this
11 Court does not believe that TPL has met its burden to show that HTC's responses would "contribute
12 meaningfully" to: (1) clarifying the issues in the case; (2) narrowing the scope of the dispute; (3)
13 setting up early settlement discussion; or (4) exposing a substantial basis for a motion under Rule 11
14 or Rule 56. As HTC rightfully points out, it is difficult to clarify substantially the issues in the case
15 or narrow the scope of the dispute before important discovery — such as party depositions — have
16 been conducted. Defendants also have made no argument with respect to settlement discussions.
17 And Defendants have already represented to HTC that it does not seek the responses to support a
18 Rule 11 motion (Chen Decl., ¶ 10), and a Rule 56 motion is not likely prior to claim construction.

19    In short, discovery is still in full-swing, and Defendants have not shown a real need for
20 supplemented responses at this point in time. HTC, however, shall supplement its responses to
21 these interrogatories within 30 days after the filing of the parties' Joint Claim Construction and Pre-
22 Hearing Statement as it proposed. Defendants' motion with respect to Interrogatory Nos. 1-8 is
23 denied.

24    2.  RFP No. 14

25    Defendants allege that certain of HTC's cellular phone products infringe TPL's patents.
26 HTC's cellular phone products incorporate the microprocessors (*i.e.*, computer chips) of several
27 third party chip providers. Defendants' Request for Production of Document ("RFP") No. 14 thus
28 seeks "[a]ll DOCUMENTS concerning schematics, diagrams, catalogs, code (including executable

4

or compatible code), product specifications, flow charts, models drawings, promotional literature, advertising, engineering design, design rules, engineering analysis and testing, for any HTC PRODUCT or HTC CHIP."[3]  Mar Decl., Ex. D at 7.  In other words, RFP No. 14 seeks documents related to the chips used in HTC's accused products.

As an initial matter, the documents requested by RFP No. 14 appear to be relevant to Defendants' allegations, and HTC does not appear to dispute this point.  FED. R. CIV. P. 26(b)(1).  Indeed, as for the responsive documents that are in HTC's <u>possession or custody</u>, HTC says that it "of course . . . [has] in its possession and custody certain technical documents relating to the accused chips that are necessary to incorporate such chips into HTC products," and it "has completed a thorough search and collection" of these documents and "is in the process of completing its review and production of [them]."  HTC Opp'n at 1, 2; Docket No. 220 ("Lin Decl."), ¶ 3.

The problem, however, involves documents that are in the possession and custody <u>of the third party chip providers</u>.  Defendants argue that responsive documents in the possession of HTC's chip providers are within HTC's "control," and so HTC should have to provide them.  FED. R. CIV. P. 34(a)(1) (a party must produce documents in its "possession, custody, or control").  HTC disagrees and says that Defendants should have to get those documents directly from the chip providers.

"Control is defined as the legal right to obtain documents upon demand."  <u>In re Citric Acid Litig.</u>, 191 F.3d 1090, 1107 (9th Cir. 1999) (quoting <u>United States v. Int'l Union of Petroleum & Indus. Workers</u>, 870 F.2d 1450, 1452 (9th Cir. 1989)).  "The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control."  <u>Int'l Union of Petroleum & Indus. Workers</u>, 870 F.2d at 1452.  "[P]roof of theoretical control is insufficient; a showing of actual control is required."  <u>In re Citric Acid Litig.</u>, 191 F.3d at 1107; <u>see also</u> <u>Int'l Union of Petroleum & Indus. Workers</u>, 870 F.2d at 1453-54 ("Control must be firmly placed in reality, not in an esoteric concept such as 'inherent relationship.'") (internal citations omitted).

---

[3] HTC CHIP is defined as "all integrated circuits found within any" HTC product in the United States.  Mar Decl., Ex. D. at 3.

5

As HTC points out, Defendants have "failed to make any showing that HTC has 'control' over the third-party chip supplier documents that are not in its possession or custody." HTC Opp'n at 5. Without citing anything, Defendants make the conclusory statement that "the supplier-customer relationship between HTC and its chip providers suggests that it has the ability to get, upon request, documents describing the chips HTC has bought from those suppliers." Defendants' Motion at 8. They also state in a footnote that HTC "likely" has a "legal right to obtain" documents from its chip providers pursuant to its contracts with those chip providers. Id. at n.4. For its part, HTC says that it is "unaware of any such relationship." HTC Opp'n at 4. Indeed, Brad Lin, a Deputy Patent Engineer in its legal department, submitted a declaration stating that "HTC is a separate entity from its chip suppliers, and [he] is unaware of any agreements or other relationships between HTC and its chip suppliers that give HTC the legal right to obtain additional documents upon demand." Lin Decl., ¶ 4.

Defendants reply that Lin's declaration is not persuasive.[4] They say that Lin's declaration "does not explain whether (and how) he is in a position to know whether such agreements or other relationships exist, makes no claim to have searched HTC's records for such agreements or for other evidence of such relationships, and fails to describe the analysis (if any) he performed to reach the conclusion that HTC has no right to obtain chip-level documents from its chip suppliers." Docket No. 222 ("TPL Reply") at 2-3.

Without conceding that Lin's declaration lacks sufficient support, HTC nevertheless agreed at oral argument to review the agreements between HTC and its chip providers to definitively determine whether HTC does or does not have the legal right to obtain additional documents upon demand, as Lin declared. HTC shall do so within 30 days from the date of this order. At this point,

---

[4] Defendants also argue that In re Citric Acid Litigation suggests that HTC needed to have asked its chip providers to produce the documents before it could legitimately oppose Defendants' motion to compel on lack-of-control grounds. While in that case, the opposing party did, in fact, make such a request (the party possessing the documents refused to produce them), this fact was used as an illustrative example of how the opposing party had no legal right to obtain the requested documents. In re Citric Acid Litig., 191 F.3d at 1108. Nowhere did the court suggest that a party without possession of documents must ask the party with possession of documents to produce them before the party without possession may oppose a motion to compel. On the contrary, the Ninth Circuit in Union of Petroleum & Indus. Workers actually seems to have suggested the opposite. In that case, the court noted that the party seeking the documents could have obtained the records it sought directly from the parties possessing them and pointed out that the party seeking the documents had not even tried to do so. Int'l Union of Petroleum & Indus. Workers, 870 F.2d at 1454.

6

though, and after review of the evidence before it, this Court is not persuaded that Defendants have met their burden of proving that the HTC has control over the chip providers' documents. Defendants' motion with respect to RFP No. 14 is therefore denied.

   B. <u>HTC's Motion to Compel Responses to Interrogatory Nos. 3 and 4 and RFP Nos. 3, 5, 6, and 8-11</u>

HTC filed a motion to compel further responses to its Interrogatory Nos. 3 and 4 and RFP Nos. 3, 5, 6, and 8-11. Docket No. 197 ("HTC Motion").

   1. <u>Interrogatory Nos. 3 and 4</u>

HTC first moves to compel TPL to respond to its Interrogatory Nos. 3 and 4. HTC's broadly-drafted Interrogatory Nos. 3 and 4 ask TPL to "[d]escribe all circumstances surrounding every license to or offer to license" the patents-in-suit and to "[i]dentify all communications" that TPL had without anyone "relating or referring to a claim of infringement and/or validity" of the patents-in-suit. Chen Decl., Ex. D at 2. Under Rule 33(d), a party responding to an interrogatory by referring to its produced business records must specify the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." FED. R. CIV. P. 33(d)(1).

After objecting to Interrogatory Nos. 3 and 4 as overbroad, unduly burdensome, and irrelevant, TPL responded that the requested information could be found within the 1.8 million pages of documents that had been collected for a prior litigation in Texas (the "Texas litigation") and produced to TPL. These documents were produced to HTC because they relate to the patents-in-suit. But in that litigation, TPL says it was not asked or required to record or log which communications within the 1.8 million pages related to an offer to license or a communication regarding infringement or invalidity, so these documents are essentially uncategorized as far as their responsiveness to Interrogatory Nos. 3 and 4. Moreover, those documents were collected, reviewed, and produced by the law firm of Townsend Townsend & Crew LLP, which represented TPL in the Texas litigation but which is not TPL's counsel here. Docket No. 215 ("TPL Opp'n") at 12.

This means that in order to fully comply with Interrogatory Nos. 3 and 4, TPL would have to review and categorize all of these 1.8 million pages of documents — a rather large endeavor.

7

Indeed, a more detailed response to these interrogatories, TPL says, "would literally require drafting a treatise to include the millions of pages of documents and communications TPL has produced regarding the licensing, infringement, and invalidity" of the patents-in-suit. TPL Opp'n at 11. While this may be true, HTC contends that TPL's response — which, essentially, merely directs HTC to the 1.8 million pages of documents from the Texas litigation — does not comport with Rule 33(d). It says that TPL is in a superior position to identify the responsive communications since they are TPL's documents. "Considering that HTC was not involved in those communications and does not know the identities of the persons with whom TPL has communicated regarding the Patents-in-Suit," HTC even says that "it is questionable whether HTC could even adequately identify those communications or separate them from the vast number of unrelated documents in TPL's production." HTC Motion at 4.

As it explained at oral argument, this Court believes that Interrogatory Nos. 3 and 4 are extremely broad. To answer them in writing would be a difficult task, indeed. But this does not mean that TPL may simply provide HTC with 1.8 million documents that it says are relevant but also say that it does not know what is in them because the documents were originally reviewed and produced by different counsel.

When the burden of deriving or ascertaining an answer to a discovery request is substantially the same for either party, the court has discretion to decide which party should do it. See Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc., No. C07-1359 PJH (JL), 2008 WL 5272186, at *3 (N.D. Cal. Dec. 15, 2008) (". . . Rule 33(d) makes it entirely appropriate to shift the burden of that exercise to the requesting party when, as here, 'the burden of deriving or ascertaining the answer will be substantially the same for either party.'"); United States ex rel Englund v. Los Angeles County, 235 F.R.D. 675, 680 (E.D. Cal. 2006) ("[W]here the information is contained in business records and answering the question would require the responding party to engage in burdensome or expensive research, the responding party may answer by specifying the records from which the answer may be obtained."). So, if TPL is not going to review the 1.8 million pages of documents itself, it must help Plaintiffs to do so. To that end, TPL shall provide to Plaintiffs any indices, keys, guides, or tags related to the review of these documents that may enable Plaintiffs to

more easily identify and/or categorize the documents for responsiveness to Interrogatory Nos. 3 and 4. In addition, HTC may take a Rule 30(b)(6) deposition of TPL on the topic of how these 1.8 million documents were collected, gathered, arranged, and organized for production. Any such deponent should be prepared to suggest possible search terms that would assist Plaintiffs to identify documents responsive to their Interrogatory Nos. 3 and 4.

The parties are to meet and confer about these interrogatories forthwith. Within 30 days from the date of this order, the parties are ordered to submit a joint report describing their efforts to make the review of these 1.8 million documents more effective and what still needs to be done.

2. RFP Nos. 3, 5, 6, and 8-11

HTC also moves to compel TPL to respond to its RFP Nos. 3, 5, 6, and 8-11. Collectively, HTC's RFP Nos. 3, 5, 6, and 8-11 seek all documents and communications that relate or refer to: (a) any licensing involving the patents-in-suit; (b) any claims of infringement and/or validity of the patents-in-suit; (c) any prior art to the patents-in-suit; (d) the sales or marketing of any products practicing the patents-in-suit; (e) any legal disputes involving the patents-in-suit; and (f) any settlement negotiations related to any legal disputes involving the patents-in-suit. Chen Decl., Ex. E at 7-12. In its motion, HTC makes several persuasive arguments, which TPL does not successfully rebut, demonstrating the relevance of the requested documents and communications to important issues in this case, including those relating to invalidity, non-infringement, ownership, and damages, and, as such, TPL needs to fully respond to HTC's RFPs.

In its opposition and at oral argument, TPL represented that it has already produced any responsive external documents and communications, and HTC did not contradict this.[5] Instead, TPL objects to producing purely internal document and communications, which it says are likely to be protected by the attorney-client privilege and work product doctrine. If that is indeed the case,

---

[5] For example, TPL says it has already produced the infringement and invalidity evidence in this case (*i.e.*, infringement contentions and prior art in this and prior litigation; supporting references and reverse-engineering reports; reexamination files). TPL Opp'n at 6-7; Mar Decl., ¶¶ 3-6. It says it has also produced "hundreds of thousands of pages of communications with hundreds of prospective and actual licenses from 2005 through October 14, 2010" and another 1.5 million pages of product reports that were exchanged between TPL and prospective licensees. TPL Opp'n at 7; Mar Decl., ¶¶ 2-3. In addition, it says it has produced the documents related to the ownership of the patents-in-suit, including the 2002 Commercialization Agreement between Charles Moore and TPL (and the 2007 amendment thereto); the 2005 Master Agreement between TPL and Patriot Scientific; and other assignment documents. TPL Opp'n at 7-8.

9

1 and TPL can legitimately make such claims, TPL should produce a privilege log describing the
2 documents and communications that are so protected. Such claims do not, however, shield TPL
3 from having to fully respond to RFPs properly propounded upon it.

4 The parties shall update the Court as to their progress on this issue in their joint report to be
5 submitted within 30 days from the date of this order.

C. HTC's Request for Judicial Notice

HTC requests that the Court take judicial notice of the complaint filed in Moore v. TPL, et al., No. 1-10-CV-183613, filed in Santa Clara County Superior Court on September 27, 2010. This action was removed to federal court and is now pending before Judge Ware. See Moore v. TPL, et al., No. C10-04747 JW (HRL). Since this complaint is properly filed and not subject to dispute, this Court will take judicial notice of it.

**CONCLUSION**

Based on the foregoing: (1) Defendants' motion to compel (Docket No. 191) is DENIED; and (2) HTC's motion to compel (Docket No. 197) is taken under advisement. The parties shall proceed as instructed above and shall file a joint report within 30 days from the date of this order.

**IT IS SO ORDERED.**

Dated: January 12, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

10

**C08-00882 JF (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Eugene Y. Mar | emar@fbm.com, ljensen@fbm.com, mclaros@fbm.com |
| Heidi Lyn Keefe | hkeefe@cooley.com, jmcintosh@cooley.com |
| Jeffrey M. Fisher | jfisher@fbm.com, calendar@fbm.com, renterig@fbm.com, wpemail@fbm.com |
| John L. Cooper | jcooper@fbm.com, brestivo@fbm.com, calendar@fbm.com |
| Kyle Dakai Chen | kyle.chen@cooley.com, jmcintosh@cooley.com, lfass@cooley.com |
| Mark R. Weinstein | mweinstein@cooley.com, lfass@cooley.com, mkenny@cooley.com |
| Nan E. Joesten | njoesten@fbm.com, calendar@fbm.com, llaflamme@fbm.com |
| Stephanie Powers Skaff | sskaff@fbm.com, bwestburg@fbm.com, calendar@fbm.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**