**\*\* E-filed March 1, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HTC CORP., et al., | No. C08-00882 JF (HRL) |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO MODIFY THE PROTECTIVE ORDER** |
| v. | |
| TECHNOLOGY PROPERTIES LIMITED, et al., | **[Re: Docket No. 235]** |
| Defendants. | |

## BACKGROUND

In February 2008, plaintiffs HTC Corporation and HTC America, Inc. (collectively, "HTC") filed this declaratory judgment action against defendants Technology Properties Ltd. ("TPL"), Patriot Scientific Corp. ("Patriot Scientific"), and Alliacense Ltd. ("Alliacense") (collectively, "Defendants"), alleging that certain of TPL's patents were not infringed and are invalid. Defendants filed counterclaims, alleging that certain of HTC's cellular phone products infringe TPL's patents.[1]

The parties entered into a two-tiered protective order (Docket No. 161), which is substantially identical to the protective order in a related case, Acer Inc. et al. v. Technology

---

[1] The four patents currently at issue are Nos. 5,809,336 (the "'336 Patent"); 5,440,749 (the "'749 Patent"); 6,598,148 (the "'148 Patent"); and 5,530,890 (the "'890 Patent").

Properties Limited et al., No. 5:08-cv-877 (N.D. Cal.).[2] Under the protective order as it now stands, TPL's and Alliacense's in-house personnel are prohibited from viewing documents designated as "Highly Confidential - Attorneys' Eyes Only." Docket No. 161 at ¶ 7.3.

According to TPL and Alliacense, HTC has produced 1,838 pages of highly technical data sheets, programmer guides, specifications, design manuals, and white papers regarding the microprocessors contained in HTC's products accused of infringement in this case, all of which have been designated as "Highly Confidential - Attorneys' Eyes Only" (the "Attorneys' Eyes Only Chip Technical Documents").[3] Many of these documents were provided to HTC by its third party microprocessor providers, who consented to their production based on their being designated as such. Docket No. 248 ("Chen Decl.") ¶ 4. TPL and Alliacense now seek to amend the protective order in this case to allow Douglas Lum, Alliacense's Manager of Reverse Engineering and Analysis, to review the Attorneys' Eyes Only Chip Technical Documents for the purpose of developing their infringement proof. Docket No. 235 ("Motion") at 2. HTC opposes the motion (Docket No. 249 ("Opp'n")), and oral argument was heard on March 1, 2011.

**LEGAL STANDARD**

The Ninth Circuit has established a balancing test to use when a party seeks discovery of an opposing party's trade secrets. The test compares "the risk of inadvertent disclosure of trade secrets to a competitor, against the risk . . . that protection of . . . trade secrets impair[s] prosecution [of the

---

[2] Acer and HTC filed declaratory judgment actions in this district seeking to establish that they do not infringe any valid and enforceable claim of four patents allegedly owned or controlled by TPL. See Acer Inc. et al. v. Technology Properties Limited et al., No. 5:08-cv-877 (N.D. Cal.); HTC Corp. et al. v. Technology Properties Limited et al., No. 5:08-cv-00882 (N.D. Cal.). Both of these suits named TPL and Alliacense as defendants. By order dated December 8, 2008, Judge Fogel declared the actions to be related.

[3] The Bates numbers of the Chip Technical Documents are as follows: HTCTP0008372-426; HTCTP0008485-497; HTCTP0010922; HTCTP0011076-116; HTCTP0013693-708; HTCTP0044132-161; HTCTP0044359-373; HTCTP0045190-324; HTCTP0045712-724; HTCTP0075349-386; HTCTP0075742-792; HTCTP0076429-462; HTCTP0087329-366; HTCTP0087404-437; HTCTP0087877-903; HTCTP0125772-809; HTCTP0126354AA 354AU; HTCTP0148033-247; HTCTP0148397-453; HTCTP0148591-608; HTCTP0148725-901; HTCTP0155233-260; HTCTP0175966-6658; and HTCTP0179490-539. Docket No. 252 ("Joesten Decl.") ¶ 2.

discovering party's] claims." Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992).

## DISCUSSION

A. TPL and Alliacense's Need for Lum to Review the Documents

TPL and Alliacense argue that Lum is uniquely qualified to review the Attorneys' Eyes Only Chip Technical Documents. Motion at 4, 7-9. In support of this claim, Lum declares that his "primary responsibility within Alliacense is to analyze third party products for the purpose of determining whether they may infringe . . . the patents-in-suit in this litigation." Lum Decl. ¶ 3. In connection with this work, "[he] regularly review[s] technical manuals and specifications, and [he] has] prepared thousands of claim charts evaluating hundreds of product, including the HTC products accused of infringement in this case." Id. Thus, he is "intimately familiar with the patented technology" and has "specialized technical knowledge and expertise, based on [his] years of experience assessing infringement of the patents-in-suit and [his] familiarity with the accused products, that uniquely qualifies [him] to assist with the technical analysis in this case." Id. ¶ 4.

In addition, TPL and Alliacense claim that "[w]ithout Mr. Lum's assistance, [they] will need to retain an expert to learn the more than 6,000 pages of file wrapper histories on the four patents in suit (themselves the subject of more than 15 requests for reexamination) and to become intimately familiar with HTC's accused products." Opp'n at 7. Based on the declaration of Mac Leckrone, President and CEO of Alliacense, TPL and Alliacense argue that no independent expert could match Lum's level of expertise without a full year of study and preparation" because the size of the file histories of the four patents-in-suit and there are more than 1,000 pieces of prior art. Motion at 9 (citing Leckrone Decl. ¶ 4. ("Alliacense expects that new engineers joining company team require at least one full year to acquire deep understanding the MMP Portfolio, the claims, and the file history.")). Thus, "[f]or an expert not already intimately familiar with the patents and the accused products, analyzing HTC's [Attorneys' Eyes Only] Chip Technical Documents and comparing them to the relevant asserted claims is a Herculean task." Id.

While Lum may be qualified to do the work that Defendants' want to be done, the Court is somewhat skeptical of TPL and Alliacense's claim that it would be extremely hard for them to find

an acceptable outside expert for this task. Leckrone's declaration explains that it would take an expert a full year to match Lum's experience, but this is not the point. Rather, the point is whether TPL and Alliacense's action would be impaired if Lum, as opposed to an outside expert, is not allowed to review the Attorneys' Eyes Only Chip Technical Documents. Leckrone's declaration does not address this.

Moreover, TPL and Alliacense have already hired a competent outside expert, Dr. Oklobdzija, who has been providing assistance to them for over two years. At oral argument, they suggested that Dr. Oklobdzija was simply too busy with his academic duties to provide them more of his time and that other outside experts could have conflicts of interest that would prevent their retention by TPL and Alliacense. While the Court does not doubt that <u>some</u> outside experts may have such conflicts, it is unpersuaded by TPL and Alliacense's argument, and, in any case, Dr. Oklobdzija's retention would suggest that perfectly acceptable outside experts who do not have conflicts of interest do, in fact, exist for TPL and Alliacense to hire.[4] Otherwise, how would he have been hired?

B.  <u>Risk of Disclosure and Harm to HTC</u>

TPL and Alliacense also argue that allowing Lum to review these documents presents no risk of trade secrets to a competitor.  First, TPL and Alliacense say that Lum is not engaged in competitive decisionmaking. Motion at 10-11. This appears to be true: Lum declares that he does not participate in the development of products, decisions about product pricing or design, or the prosecution or reexamination of patents, has no personal or professional interaction with any member of TPL's product development team, and has no involvement in identifying prospective licensees for the patents in suit. Lum Decl. ¶ 6. This Court has no reason to doubt his credibility.

Second, TPL and Alliacense state that they are distinct entities and that Alliacense, Lum's employer, is not involved with product development. Motion at 11-12. As Mac Leckrone declares: "Alliacense is the corporate entity responsible for licensing and enforcing the . . . four patents-in-suit. While Co-Defendant TPL develops and markets products practicing the inventions at issue in

---

[4] Indeed, TPL and Alliacense did not submit a declaration describing the steps they may have taken in their search for a suitable second expert who does not have a conflict of interest.

4

1  this case, Alliacense has no involvement whatsoever in TPL product development. Alliacense has its
2  own management, offices, file servers, and IT department, and the activities of the two corporate
3  entities are wholly separate and discrete." Leckrone Decl. ¶ 2. But even if this is true, the two
4  entities are, at the very least, related, and disclosure to Alliacense, even with the protections TPL
5  and Alliacense propose, are cause for concern.[5] Indeed, as HTC points out, in denying a motion
6  seeking access to an adverse party's confidential information by an in-house counsel of a licensing
7  entity — which Alliacense is — Magistrate Judge Chen explained that "where the party asserting
8  infringement is in the business of acquiring intellectual property and enforcing it against other
9  entities using the allegedly infringing technology, '[t]here is little doubt' that the alleged infringer's
10 confidential information could be of value." Shared Memory Graphics, LLC v. Apple, Inc., No.
11 C10-02475 VRW (EMC), 2010 U.S. Dist. LEXIS 125184, at *7 (N.D. Cal. Nov. 12, 2010). And,
12 while Lum says that he is not engaged in licensing, he does directly report to Alliacense's director
13 of licensing operations. Lum Decl. ¶ 5. In such a situation, this Court has already noted that it is
14 "skeptical about allowing even the most trustworthy of defendants' employees to view such
15 sensitive information." Acer Inc. et al. v. Technology Properties Limited et al., No. 5:08-cv-877,
16 Docket No. 130 (N.D. Cal. May 14, 2009).

17      TPL and Alliacense cite some cases where courts have allowed an in-house employee of a
18 party to view confidential information of an opposing competitor where the employee had some
19 very specialized knowledge and did not engage in competitive decisionmaking. Motion at 7-12. But
20 crucial to the reasoning in these cases is that the moving party showed that no outside experts
21 existed who could sufficiently analyze the technology at issue. See, e.g., MGP Ingredients, Inc. v.
22 Mars Inc., 245 F.R.D. 497, 502 (N.D. Cal. 2007) (in-house personnel had substantial experience in a
23 narrow field that could not be replaced on the "open market"); Frees, Inc. v. McMillian, No. 05-
24 1979, 2007 WL 184889, at * 5 (W.D. La. Jan. 22, 2007) (opposing party provided no information to
25 refute moving party's contention that it would be forced to hire an expensive outside expert, which
26 would be difficult because no experts currently have the particularized knowledge of the relevant

---

[5] This is so even though, under their proposed amendment, Lum would only be able to review the Attorneys' Eyes Only Chip Technical Documents at the offices of TPL and Alliacense's counsel, Farella Braun + Martel. Motion at 12.

5

technology). As discussed above, the Court does not believe that TPL and Alliacense sufficiently made such a demonstration.

HTC argues that many of the Attorneys' Eyes Only Chip Technical Documents are documents that were given to HTC by third party chip manufacturers, and those manufacturers did so in reliance on the protections in the protective order. Opp'n at 8. Those manufacturers, HTC argues, should get the benefit of their bargain. Id. HTC's point is still well-taken.

In sum, the Court concludes that TPL and Alliacense have not established a "very good reason" for modifying the protective order to allow Lum to review HTC's highly confidential documents. See Acer Inc. et al. v. Technology Properties Limited et al., No. 5:08-cv-877, Docket No. 130 (N.D. Cal. May 14, 2009).

## CONCLUSION

Based on the foregoing, TPL and Alliacense's motion to modify the protective order is DENIED.

**IT IS SO ORDERED.**

Dated: March 1, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

6

**C08-00882 JF (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Deepak Gupta | dgupta@fbm.com, calendar@fbm.com, llaflamme@fbm.com |
| Eugene Y. Mar | emar@fbm.com, ljensen@fbm.com, mclaros@fbm.com |
| Heidi Lyn Keefe | hkeefe@cooley.com, hhunt@cooley.com, jmcintosh@cooley.com |
| Jeffrey M. Fisher | jfisher@fbm.com, calendar@fbm.com, renterig@fbm.com, wpemail@fbm.com |
| John L. Cooper | jcooper@fbm.com, brestivo@fbm.com, calendar@fbm.com |
| Kyle Dakai Chen | kyle.chen@cooley.com, jmcintosh@cooley.com, lfass@cooley.com |
| Mark R. Weinstein | mweinstein@cooley.com, lfass@cooley.com, mkenny@cooley.com |
| Nan E. Joesten | njoesten@fbm.com, calendar@fbm.com, llaflamme@fbm.com |
| Stephanie Powers Skaff | sskaff@fbm.com, bwestburg@fbm.com, calendar@fbm.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**