COOLEY LLP
HEIDI L. KEEFE (178960) (hkeefe@cooley.com)
MARK R. WEINSTEIN (193043) (mweinstein@cooley.com)
KYLE D. CHEN (239501) (kyle.chen@cooley.com)
Five Palo Alto Square, 4th Floor
3000 El Camino Real
Palo Alto, California 94306-2155
Telephone:     (650) 843-5000
Facsimile:      (650) 857-0663

Attorneys for Plaintiffs
HTC CORPORATION and
HTC AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HTC CORPORATION and HTC AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, and ALLIACENSE LIMITED, <br><br> Defendants. | Case No. 5:08-cv-00882 PSG <br><br> [Related to Case No. 5:08-cv-00877 PSG] <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF (1) NON-INFRINGEMENT OF U.S. PATENT NOS. 5,530,890 AND 5,809,336; AND (2) NO WILLFUL INFRINGEMENT OF U.S. PATENT NO. 5,530,890** <br><br> Date:   August 13, 2013 <br> Time:  10:00 a.m. <br> Place:  Courtroom 5, 4th Floor <br> Judge: Hon. Paul S. Grewal <br><br> Complaint Filed:   February 8, 2008 <br> Trial Date:              September 23, 2013 |

Case No. 5:08-cv-00882 PSG

HTC's NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT

1  **NOTICE OF MOTION AND MOTION**

2  PLEASE TAKE NOTICE that Plaintiffs HTC Corporation and HTC America, Inc.
3  (collectively "Plaintiffs" or "HTC") move, pursuant to Federal Rule of Civil Procedure 56, for
4  partial summary judgment (1) of non-infringement for any alleged infringement of U.S. Patent
5  Nos. 5,530,890 (the "'890 patent") occurring prior to March 1, 2011; (2) of non-infringement for
6  any alleged infringement of U.S. Patent No. 5,809,336 (the "'336 patent") occurring prior to
7  December 15, 2009; and (3) of no willful infringement of the '890 patent.

8  This Motion is filed pursuant to the briefing schedule established by the Court's order of
9  July 3, 2013, as amended on July 12, 2013. (Doc. Nos. 452, 456.) This Motion is based on the
10 Memorandum of Points and Authorities set forth below, the accompanying declaration of Mark R.
11 Weinstein ("Weinstein Decl.") submitted herewith, and such other matters as may be presented at
12 the hearing on HTC's motion and allowed by the Court.

13  **MEMORANDUM OF POINTS AND AUTHORITIES**

14  **I.   INTRODUCTION**

15  The '890 and '336 patents-in-suit were involved in *ex parte* reexaminations that resulted
16 in the addition of new claims and the cancellation of or narrowing amendments to each
17 independent claim. Under the doctrine of absolute intervening rights in 35 U.S.C. § 307(b),
18 Defendants Technology Properties Ltd., Patriot Scientific Corp., and Alliacense Ltd. (collectively
19 "TPL") cannot recover damages for alleged infringement of a patent that was narrowed in
20 reexamination prior to the issuance of the reexamination certificate. In this case, a substantial
21 portion of the damages TPL seeks from HTC under the '890 patent and the '336 patent is based on
22 sales of accused HTC products that took place prior to issuance dates of these reexamination
23 certificates. HTC is therefore entitled to judgment as a matter of law that TPL cannot recover
24 damages with respect to the '890 or '336 patent prior to those dates.

25  HTC also seeks summary judgment against HTC's claim of willful infringement under the
26 '890 patent.[1] As shown below, TPL has presented no evidence to satisfy either the subjective or

27 ───────────────

28 [1] This motion addresses TPL's willful infringement contentions as to the '890 patent and not the

the objective prong of the willful infringement standard under *Seagate*, and as such, summary judgment is appropriate.

## II. ARGUMENT

### A. HTC Is Entitled to Partial Summary Judgment of Non-Infringement Under the Absolute Intervening Rights Doctrine

Under 35 U.S.C. § 307(b), a patent owner may not recover, prior to the issuance of the reexamination certificate, for any alleged infringement of a patent whose scope was substantively changed in reexamination. "Unless a claim granted or confirmed upon reexamination is ***identical to an original claim***, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate." *Bloom Engineering Co., Inc. v. North American Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) (emphasis added). "'Identical' does not mean verbatim, but means at most without substantive change." *Id.* Because all asserted claims of the '890 patent and the '336 patent underwent "substantive change" during reexamination, TPL cannot recover damages prior to the issuance of the reexamination certificate for each patent.

### 1. No Recovery Under the '890 Patent Prior to March 1, 2011

The '890 patent issued on June 25, 1996 with 10 originally-issued claims, with claim 1 being the sole independent claim. (Weinstein Decl. Ex. 1.) On January 19, 2009, an *ex parte* reexamination request was filed against the '890 patent. More than two years later, on March 1, 2011, the Patent Office issued an *ex parte* reexamination certificate canceling claims 1-4 and adding new claims 11-20. (Weinstein Decl. Ex. 2.) In the present case, TPL is only asserting claims 11, 12, 13, 17 and 19 of the '890 against HTC – all of which were added during the reexamination and are substantively different from the original claims.

In particular, TPL added claim 11 during the reexamination by copying the language from claim 1 but adding a critical new limitation to overcome the prior art. Claim 11 as issued from the

---

'336 patent. This is because HTC is filing, concurrently herewith, a separate motion for summary judgment of full non-infringement as to the '336 patent. That motion also alternatively argues that TPL has no evidence of willful infringement as to the '336 patent. As such, alleged willful infringement as to the '336 patent is not discussed in this motion.

Case No. 5:08-cv-00882 PSG        -2-        HTC's NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

reexamination reads (with the new limitation shown in bold underlining):

> 11. (New) A microprocessor, which comprises a main central processing unit and a separate direct memory access central processing unit in a single integrated circuit comprising said microprocessor, said main central processing unit having an arithmetic logic unit, a first push down stack with a top item register and a next item register, connected to provide inputs to said arithmetic logic unit, an output of said arithmetic logic unit being connected to said top item register, said top item register also being connected to provide inputs to an internal data bus, said internal data bus being bidirectionally connected to a loop counter, said loop counter being connected to a decrementer, said internal data bus being bidirectionally connected to a stack pointer, return stack pointer, mode register and instruction register, **said stack pointer pointing into said first push down stack**, said internal data bus being connected to a memory controller, to a Y register of a return push down stack, an X register and a program counter, said Y register, X register and program counter providing outputs to an internal address bus, said internal address bus providing inputs to said memory controller and to an incrementer, said incrementer being connected to said internal data bus, said direct memory access central processing unit providing inputs to said memory controller, said memory controller having an address/data bus and a plurality of control lines for connection to a random access memory.

(Weinstein Decl. Ex. 2 (Reexamination Certificate), Claim 11.)

As shown above, TPL added the limitation, "**said stack pointer pointing to said first push down stack**," to claim 11. Neither claim 1, nor any other originally-issued claim of the '890 patent, recited that limitation. The reexamination file history confirms that this limitation was not only substantively narrowing, but critical to overcoming the prior art.

The addition of claim 11 came in response to a Final Rejection in which the Examiner rejected claim 1 (and other claims) based on a number of prior art references. TPL responded by adding new claims 11-20 and making various arguments about its original claims. In adding the new claims, TPL explained:

> Claims 11-20 are new. Claim 11 is independent. Claims 12-20 depend from claim 11. The new claims are substantially similar to claims 1-10 except that Claim 11 includes language that Examiner Pokrzywa has indicated overcomes all of the current language. In particular, Claim 11 recites (in part) "said stack pointer pointing into said first push down stack," clarifying the association of the stack pointer and the first push down stack.

(Weinstein Decl., Ex. 3, (06/29/2010 Applicant Response and Amendents), at 20.)

The Examiner subsequently relied on this additional language, "said stack pointer pointing

to said push down stack," to draw clear distinctions between original claim 1 and new claim 11. He issued an Advisory Action on August 12, 2010 maintaining the rejection of claim 1 but indicating that claim 11 would be confirmed. (*See* Weinstein Decl. Ex. 4 (08/12/2010 Advisory Action).) He observed that unlike newly-added claim 11, "the current language of claim 1 does not require that a stack pointer **points to the push-down stack** … Thus, there is no function claimed for the 'stack pointer', only that a stack pointer is bidirectionally connected to an internal bus." (*Id.* at 5 (bold in original).)

The Examiner subsequently conducted a telephone interview with TPL's representative in which TPL authorized an examiner's amendment cancelling claim 1. (*See* Weinstein Decl. Ex. 5 (11/03/2010 Notice of Intent to Issue Reexamination Certificate), at 2.) In that same amendment, the Examiner found claim 11 patentable over the prior art, stressing the importance of the new claim limitation:

> The closest prior art of record, being the May '948 reference does teach of using a push down stack. However, the May '948 reference does not expressly describe a stack pointer that points "into said first push down stack". With this feature, which was added in the Patent Owner's amendment dated 6/29/2010, claim 11 is deemed patentable.

(*Id.* at 8.) This reexamination record leaves no doubt that the limitation added during the reexamination, "said stack pointer pointing to said push down stack," substantively changed the scope of the claims. The Reexamination Certificate for the '890 patent issued on March 1, 2011, and as such, TPL cannot recover damages for any alleged infringement prior to that date.

As noted previously, the only claims asserted by TPL in this litigation are claim 11 and four additional claims that depend from claim 11 (*i.e.* claims 12, 13, 17 and 19). Because claim 11 was a substantively narrower replacement to independent claim 1, and all other asserted claims depend from claim 11, all claims asserted against HTC are subject to absolute intervening rights under 35 U.S.C. § 307(b). TPL therefore cannot as a matter of law recover damages for any alleged infringement of the '890 patent occurring prior to March 1, 2011.

### 2. No Recovery Under the '336 Patent Prior to December 15, 2009

The reexamination story with respect to the '336 patent is similar to that of the '890 patent

1  discussed above. (Weinstein Decl. Ex. 6.) The '336 patent issued September 15, 1998 with 10
2  originally-issued claims, with claims 1, 3, 6, and 10 being independent claims. Between October
3  2006 and January 2007, a series of *ex parte* reexamination requests were filed against the '336
4  patent. More than three years later, on December 15, 2009, the Patent Office issued an *ex parte*
5  reexamination certificate. (Weinstein Decl. Ex. 7.) With respect to the independent claims, the
6  certificate reflected the cancellation of independent claim 3, amendments to independent claims 1,
7  6, and 10, and the addition of new independent claims 11, 13 and 16. (*Id.*) In the present case,
8  TPL is asserting independent claims 1, 6, 10, 11, 13 and 16 of the '336 against HTC – all of which
9  were either substantially narrowed or newly-added during the reexamination. As explained below,
10  all of these claims reflect significant substantive changes in scope such that TPL cannot recover
11  damages for any alleged infringement occurring prior to December 15, 2009.

12  In particular, with respect to original independent claims 1, 6 and 10, TPL amended them
13  to add new limitations relating to the origin of the clock signal for the second or external clock.
14  The amendments to these three claims are reflected in bold underline below:

> 1. A microprocessor system, comprising a single integrated circuit including a central processing unit and an entire ring oscillator variable speed system clock in said single integrated circuit and connected to said central processing unit for clocking said central processing unit, said central processing unit and said ring oscillator variable speed system clock each including a plurality of electronic devices correspondingly constructed of the same process technology with corresponding manufacturing variations, a processing frequency capability of said central processing unit and a speed of said ring oscillator variable speed system clock varying together due to said manufacturing variations and due to at least operating voltage and temperature of said single integrated circuit; an on-chip input/output interface connected to exchange coupling control signals, addresses and data with said central processing unit; and a second clock independent of said ring oscillator variable speed system clock connected to said input/output interface, **wherein a clock signal of said second clock originates from a source other than said ring oscillator variable speed system clock**.
>
> 6. A microprocessor system comprising: a central processing unit disposed upon an integrated circuit substrate, said central processing unit operating at a processing frequency and being constructed of a first plurality of electronic devices; an entire oscillator disposed upon said integrated circuit substrate and connected to said central processing unit, said oscillator clocking said central processing unit at a clock rate and being constructed of a second plurality of electronic devices, thus varying the processing frequency of said first plurality of electronic devices and the

    clock rate of said second plurality of electronic devices in the same way as a function of parameter variation in one or more fabrication or operational parameters associated with said integrated circuit substrate, thereby enabling said processing frequency to track said clock rate in response to said parameter variation; an on-chip input/output interface, connected between said central processing unit and an off-chip external memory bus, for facilitating exchanging coupling control signals, addresses and data with said central processing unit; and an **off-chip** external clock, independent of said oscillator, connected to said input/output interface wherein said off-chip external clock is operative at a frequency independent of a clock frequency of said oscillator and <u>**wherein a clock signal from said off-chip external clock originates from a source other than said oscillator**</u>.

10. In a microprocessor system including a central processing unit, a method for clocking said central processing unit comprising the steps of: providing said central processing unit upon an integrated circuit substrate, said central processing unit being constructed of a first plurality of transistors and being operative at a processing frequency; providing an entire variable speed clock disposed upon said integrated circuit substrate, said variable speed clock being constructed of a second plurality of transistors; clocking said central processing unit at a clock rate using said variable speed clock with said central processing unit being clocked by said variable speed clock at a variable frequency dependent upon variation in one or more fabrication or operational parameters associated with said integrated circuit substrate, said processing frequency and said clock rate varying in the same way relative to said variation in said one or more fabrication or operational parameters associated with said integrated circuit substrate; connecting an on-chip input/output interface between said central processing unit and an **off-chip** external memory bus, and exchanging coupling control signals, addresses and data between said input/output interface and said central processing unit; and clocking said input/output interface using an **off-chip** external clock wherein said **off-chip** external clock is operative at a frequency independent of a clock frequency of said variable speed clock <u>**and wherein a clock signal from said off-chip external clock originates from a source other than said variable speed clock**</u>.

(Weinstein Decl. Ex. 7 ('336 Reexamination Certificate), Claims 1, 6, 10.)

       As shown above, the reexamination narrowed claim 1 by adding "wherein a clock signal of said second clock originates from a source other than said ring oscillator variable speed system clock," and added similar limitations to claims 6 and 10. These limitations were not recited in any original claim of the '336 patent. Claims 6 and 10, as shown above, reflected further amendments requiring that certain recited components be "off-chip."

       These amendments narrowed the scope of the claims and were the sole basis in the Examiner's stated reasons for allowing these claims over the prior art. In his reasons for

| Case No. 5:08-cv-00882 PSG | -6- | HTC's NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT |
|---|---|---|

allowability, the Examiner expressly relied on these new features. With respect to independent claim 1 as amended, for example, the Examiner wrote:

> Claim 1: Entry of the examiner's amendment produces claim 1, which recites:
>
> "a second clock independent of said ring oscillator variable speed system clock connected to said input/output interface, wherein a clock signal of said second clock originates from a source other than said ring oscillator variable speed system clock."
>
> None of the references to Kato Ledzius et al, Ikeda et al and McDermott et al incorporate these recited features, either alone or in combination. Additionally, these features are not present in the remaining prior art of record. Accordingly, claim 1 is determined to be allowable.

(Weinstein Decl. Ex. 8 (Notice of Intent to Issue Reexamination Certificate), at 9.) The Examiner made substantially the same finding with respect to independent claims 6 and 10, in both cases relying exclusively on the new limitations added during the reexamination. (*Id.* at 9-10.)

As to new independent claims 11, 13, and 16, they were based on originally-issued claims 1, 6, and 10, respectively, but included new "wherein" limitations to the end of each claim. Claim 11, for example, was based on the language of claim 1 but added a limitation at the end, "**wherein said central processing unit operates asynchronously to said input/output interface**." (*Id.* at 10.) Similar language was incorporated into claims 13 and 16. (*Id.* at 11-12.)

As with the amendments to claims 1, 6, and 10 discussed above, the Examiner expressly relied on the "wherein" limitations in new claims 11, 13 and 16 in allowing those claims. With respect to independent claim 11, for example, the Examiner wrote:

> Claim 11: Entry of the examiner's amendment produces claim 11, which recites:
>
> "a second clock independent of said ring oscillator variable speed system clock connected to said input/output interface, wherein said central processing unit operates asynchronously to said input/output interface."
>
> None of the references to Kato Ledzius et al, Ikeda et al and McDermott et al incorporate these recited features, either alone or in combination. Additionally, these features are not present in the remaining prior art of record. Accordingly, claim 11 is determined to be allowable.

1  (*Id.* at 10.)  The Examiner made substantially the same finding with respect to independent claims

2  13 and 16, in both cases relying exclusively on the new limitations.  (*Id.* at 11-12.)

3  As with the '890 patent discussed above, the '336 reexamination record leaves no doubt that limitations were added during the reexamination substantively changing the scope of each asserted independent claim, in order to overcome prior art.  The Reexamination Certificate for the '336 patent issued on December 15, 2009, and as such, TPL cannot recover damages for any alleged infringement prior to that date.  *See* 35 U.S.C. § 307(b).

### B.  HTC Is Entitled to Partial Summary Judgment of No Willful Infringement of the '890 Patent

The Court should dispose of TPL's willful infringement claim on summary judgment because TPL has presented no evidence to support this claim.  The Federal Circuit has held that a showing of willful infringement requires that the plaintiff establish by clear and convincing evidence (1) that the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and (2) that this objectively defined risk "was either known or so obvious that it should have been known to the accused infringer."  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*).

TPL cannot establish either prong because it has come forward with no evidence whatsoever of willful infringement.  HTC propounded an interrogatory specifically asking TPL to identify its evidence and the complete factual basis for its allegation of willful infringement against HTC.  (*See* Weinstein Decl. Ex. 9 (TPL's Response to HTC Interrogatory No. 9) at 22.)  TPL's response included a parade of groundless objections but provided no substantive response.  (*Id.*)  TPL never supplemented its response to this interrogatory, and fact discovery closed long ago.

Moreover, the evidence affirmatively establishes that TPL could not establish willful infringement even if it had responded to HTC's interrogatory.  Under the objective prong of the willful infringement analysis, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  *In re Seagate Tech., LLC*, 497 F.3d at 1371.  "The state of mind of the accused infringer is not relevant to this objective inquiry."  *Id.*  This objective determination entails an

Case No. 5:08-cv-00882 PSG     -8-     HTC's NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

assessment of the reasonableness of the accused infringer's defenses, such as its defenses to infringement. *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc*., 682 F.3d 1003, 1006 (Fed. Cir. 2012). The Federal Circuit has made clear that this objective prong <u>presents a legal question suitable for summary judgment</u>. "When a defense or noninfringement theory asserted by an infringer is purely legal (*e.g.*, claim construction), the objective recklessness of such a theory is a purely legal question to be determined by the judge." *Id*. at 1007. Even in those instances when the objective prong turns on factual issues, "the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury." *Id.*

The reexamination of the '890 patent, detailed above, underscores HTC's reasonable reliance on its invalidity defense. The Patent Office granted a request to reexamine the '890 patent only upon a finding that the prior art cited in the request demonstrated "a substantial new question of patentability." 35 U.S.C. § 303(a). The Patent Office not only found a substantial new question of patentability, but as explained above, the Examiner repeatedly rejected the claims and allowed them only after TPL made narrowing amendments affecting every claim. The reexamination certificate had the effect of chopping off years of damages and restricting TPL's recovery substantially. Although the reexamination ultimately resulted in claims being confirmed, the length of the reexamination and the extent to which it weakened the '890 patent underscore the reasonableness of HTC's invalidity defenses and the lack of objective recklessness.

TPL also cannot establish the subjective prong of the willful infringement test. Under the subjective prong, "the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371. With respect to the '890 patent, there can be no claim of willful infringement because there is no evidence that HTC was placed on notice of this patent prior to TPL's filing of a countersuit against HTC on that patent. HTC did not list the '890 patent in its declaratory judgment complaint. (Doc. No. 1.) TPL has presented no evidence that HTC learned of the '890 patent or any claim of infringement before TPL countersued for infringement, which occurred after the filing of HTC's declaratory judgment complaint in the present action.

"To willfully infringe a *patent*, the patent must exist and one must have knowledge of it." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis in original); *see also Am. Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 465 (Fed. Cir. 1985) (accused infringer's alleged awareness of pending patent application insufficient to show willfulness because "[t]o willfully infringe *a patent*, the patent must exist.") (quoting *State Indus., Inc.*, 751 F.2d at 1236) (emphasis in *State Indus.*). *Seagate* also makes clear that "a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." 497 F.3d at 1374. TPL has offered no evidence of any pre-suit notice of alleged infringement by HTC of the '890 patent.

Nor can TPL base a claim of willful infringement on any alleged HTC conduct subsequent to the filing of the Complaint. The Federal Circuit held in *Seagate* that "[a] patentee who does not attempt to stop an accused infringer's activities [by moving for a preliminary injunction] should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct." 497 F.3d at 1374. TPL never sought a preliminary injunction with respect to the '890 patent, and it cannot identify any unusual circumstances that could justify an allegation of willful infringement based on any post-filing conduct. Summary judgment against TPL's willful infringement claim is therefore warranted.

### III.   CONCLUSION

For the foregoing reasons, HTC respectfully requests that the Court grant its motion for partial summary judgment of non-infringement with respect to the '890 and '336 patents. With respect to the '890 patent, HTC respectfully requests that the Court grant summary judgment of non-infringement as to any alleged infringement occurring prior to March 1, 2011. As to the '336 patent, HTC respectfully requests that the Court grant summary judgment of non-infringement as to any alleged infringement occurring prior to December 15, 2009. Finally, HTC respectfully requests that the Court grant summary judgment of no willful infringement of the '890 patent.

1  Dated:  July 16, 2013

Respectfully submitted,

COOLEY LLP
HEIDI L. KEEFE
MARK R. WEINSTEIN
KYLE D. CHEN

By: _____ */s/ Mark R. Weinstein* _____

Attorneys for Plaintiffs
HTC CORPORATION and
HTC AMERICA, INC.

1153475 v2/HN