UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HTC CORPORATION, et al., | Case No.: 5:08-cv-00882-PSG |
| Plaintiffs, | **ORDER DENYING MOTION TO EXCLUDE EXPERT REPORT OF DR. STEPHEN PROWSE** |
| v. | |
| TECHNOLOGY PROPERTIES LIMITED, et al., | **(Re: Docket No. 502)** |
| Defendants. | |

Another patent case on the eve of trial, another Daubert motion to strike a patent damages expert's testimony. The undersigned only recently observed that such motions have become a routine affair in patent litigation.[1] And yet, as routine as the motion has become, skilled experts continue to fashion new theories prompting additional lines of attacks. In short, no two motions are quite the same.

In the latest installment of this serial, the patentee and its allies seize upon a particularly interesting section of the Federal Circuit's analysis in *LaserDynamics, Inc. v. Quanta, Inc.*[2] In that

---

[1] *See Dynetix Design Solutions Inc. v. Synopsys Inc.*, No. 5:11-cv-05973-PSG (N.D. Cal. Aug 22, 2013) (No. 564).

[2] 694 F.3d 51 (Fed. Cir. 2012)

1

Case No.: 5:08-00882-PSG
ORDER

section, the Circuit suggests that in certain cases, the record might support a relatively straightforward way to avoid the restrictions of the entire market value rule in a Section 284 reasonable royalty analysis: a lump-sum payment.[3] Consistent with this suggestion, Defendants Technology Properties Limited, Patriot Scientific Corporation, and Alliacense, Limiteds' (collectively "TPL") expert Dr. Stephen Prowse looks to the 100 or so licenses to the patents-in-suit struck by TPL. Dr. Prowse eschews any reliance on the so-called "analytical method."[4] Instead, he offers the opinion that in the hypothetical negotiation that would have predated the infringement giving rise to this litigation, Plaintiffs HTC Corporation and HTC America (collectively "HTC"), too, would have agreed to an approximately $10M lump-sum payment.

HTC nevertheless cries foul. The heart of HTC's complaint is that, in calculating the value the lump sum, Dr. Prowse returns to the entire revenue of its accused mobile phones for his estimate even as he acknowledges there is no evidence that any of claimed inventions is the basis of demand for the phones. And thus, says HTC, Dr. Prowse's professed reliance on a lump-sum structure is nothing more than a ruse to avoid the entire market value rule ("EMVR") and the Federal Circuit's increasingly demanding standards surrounding it. HTC separately challenges Dr. Prowse's efforts to "tier" the existing TPL licenses to weigh what HTC would have paid here in light of the assumption in any hypothetical negotiation that the patents-in-suit are valid and infringed.

With little to guide its analysis beyond the single sentence in *LaserDynamics*, the court is not persuaded that Dr. Prowse's analysis is so methodologically flawed that it must be kept from the jury.

---

[3] *See id.* at 70 (identifying LaserDynamics's failure to consider "that a per-unit running royalty is not the only form of a reasonable royalty that the parties might have agreed to" in a hypothetical negotiation).

[4] *See Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (contrasting analytical method with hypothetical negotiation as a means for estimating reasonable royalty).

2

Case No.: 5:08-00882-PSG
ORDER

Here's why. Lump sums are one species of the broader genus of reasonable royalties, running royalties being another. Depending on the certainty of the market opportunity, the cash constraints of the licensee, the licensor's appetite for risk and superior insight into the utility of the patented invention, the parties' competitive posture, and undoubtedly other factors, a lump sum structure might better reflect what the hypothetical negotiation would produce.[5] Especially where, as here and in *LaserDynamics*, the patentee itself consistently and regularly negotiated lump sum payments with its licensees, there is even more reason to believe that the parties would have agreed to a lump sum to allow the licensee to infringe.[6]

And so if a lump sum payment is reasonably assumed to be the result of the hypothetical negotiation that begs the next question: how would the parties have figured out what that lump sum would have been? According to Dr. Prowse, here TPL and its licensees regularly estimated the anticipated revenue of the entire licensed product in arriving at a bottom line number.[7] Given this record, the court cannot say Dr. Prowse's estimate is so unreliable as to violate the norms of Fed. R. Evid. 702. In *Lucent*, the Federal Circuit at least suggested that so long as an expert does not openly invite the jury to "speculate" about the future, she may opine on the magnitude of the lump sum payment by "estimating" what the total royalty would be based on a running royalty on the accused product as a whole.[8] The Circuit did not suggest, and has not since suggested, that such as estimate is appropriate only where the demand requirement of the EMVR is satisfied. Two

---

[5] *See generally Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009).

[6] *Cf. Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-29 (Fed. Cir. 2009) (rejecting lump sum award in the absence of comparable lump sum licenses to patents-in-suit).

[7] *See* Docket No. 531-1, ¶¶ 2-4, 8; Docket No. 532-2, Ex.10, 34:10-22, 83:17-84:21; Docket No. 532-2 Ex. 11, TPL-NDH2234493-2234496; Docket No. 532-2, Ex. 12, TPL-NDH2235191-2235196; Docket No. 532-3, Ex. 13, TPL-NDH2241645-2241646; Docket No. 532-3, Ex. 14, TPL-NDH2238249-2238254; Docket No. 532-3, Ex. 15, TPL-NDH2244562-2244567; Docket No. 532-3, Ex. 16, TPL-NDH2244081-2244085; Docket No. 532-3, Ex. 17, TPL-NDH2242918-2242923.

[8] *Lucent*, 580 F.3d at 1327.

considerations are critical. The first is that there is evidence in the record in this case that this is what TPL and its licensees did over and over again.[9] The second is not to use lump sum agreements that bear little resemblance to the hypothetical license in terms of patents licensed and field of use.[10]

While HTC raised hackles about the licenses TPL relies on, the present situation is hardly analogous to the circumstances in *Lucent* and other recent cases before the Circuit. For example, in *Lucent*, there was no attempt to compare the subject matter of the patents licensed in the other agreements.[11] Here, there is no dispute that while the other agreement did license broader rights, those rights included the very same patents asserted against HTC. The licensor was none other the TPL, the same licensor here. While the other agreements did involve broader geographic rights than just those of the United States, so long as this broader scope is accounted for, the agreements may still be properly considered.[12] Perhaps this explains why HTC's own damages expert agreed that the agreements were comparable.[13]

---

[9] The court appreciates that *LaserDynamics* appeared to limit its endorsement of lump sums to those not calculated as a percentage of any component or product. *LaserDynamics*, 694 F.3d at 70. But the Circuit did not retreat from its broader suggestion in *Lucent*, and nothing else suggests that the Circuit would not further endorse, lump sums calculated on such a base where as here, the record includes real world evidence of precisely this methodology.

[10] *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("licenses relied on by the patentee in proving damages" must be "sufficiently comparable to the hypothetical license at issue in suit").

[11] *Lucent*, 580 F.3d at 1327-28 (explaining that only four of the eight agreements at issue were purportedly lump sum agreements and those agreements were either "radically different" or not tied factually to the hypothetical negotiation).

[12] *Cf. Multimedia Patent Trust v. Apple Inc.*, Case No. 10–CV–2618–H (KSC), 2012 WL 5873711, at *7 (S.D. Cal. Nov. 20, 2012) (citing *Wordtech Sys., Inc v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010)) ("A damages expert may rely on comparable licenses that are different from the hypothetical agreement as long as he 'account[s] for the technological and economic differences between them.'" (internal quotations omitted)).

[13] *See* Docket No. 532-2, Ex. 8, 61:22-62:13.

4
Case No.: 5:08-00882-PSG
ORDER

As for the "tiering," or weighting, of the so-called comparable agreements, TPL rightly points out that the Circuit has repeatedly held that the presumption of validity and infringement can result in an increase royalty.[14]  Whatever flaws there are in Dr. Prowse's approach can be drawn out through vigorous cross-examination.

Whether any of this will persuade the jury remains unclear.  That is not the issue before the court.  What is clear is that the jury should get the opportunity to hear this evidence, look Dr. Prowse in the eye, and give his testimony whatever weight it deems appropriate.

HTC's motion is DENIED.

**IT IS SO ORDERED.**

Dated: September 6, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[14] *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346-47 (Fed. Cir. 2011) (holding that patent may be less valuable at earlier time (i.e., when it reflects "deep discount") when there is uncertainty as to its validity or infringement); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("a reasonable royalty may permissibly reflect the fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty") (internal quotations omitted).

5
Case No.: 5:08-00882-PSG
ORDER