UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HTC CORPORATION, et al., <br><br>　　　　　　Plaintiffs, <br>　　v. <br><br>TECHNOLOGY PROPERTIES LIMITED, et al., <br><br>　　　　　　Defendants. | Case No.: 5:08-cv-00882-PSG <br><br>**ORDER ON MOTIONS IN LIMINE** <br><br>**(Re: Docket Nos. 488, 489, 490, 492, 495, 499, 501, 503, 504)** |

　　　　Before the court are the parties' in limine motions, including three so-called "Daubert" motions. Defendants Technology Properties Limited, Patriot Scientific Corporation, and Alliacense, Limited (collectively "TPL") bring five motions and Plaintiffs HTC Corporation and HTC America, Inc., (collectively "HTC") also bring five. Each are addressed below, with the exception of HTC's Daubert motion to exclude the expert report of Dr. Stephen Prowse, which is addressed in a separate order.

　　　　The law applicable to such motions is well-understood, and so the court will only note the following. Fed R. Evid. 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable," or if it is of any consequence in resolving the action. Fed. R. Evid. 403 gives the court discretion to exclude relevant evidence "if its probative value is substantially

1

Case No.: 5:08-cv-00882-PSG
ORDER

outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Fed. R. Evid. 702 governs testimony by a qualified expert, who may testify only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 703 permits expert testimony only if it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

On August 29, 2013, the parties appeared for the pretrial conference.  Having reviewed the papers and considered the arguments of counsel, the court addresses each argument and lays out its reasoning below.

**A.    TPL's Motions**

**1.    Prior Litigation**

IT IS HEREBY ORDERED that TPL's motion regarding prior litigations is GRANTED-IN-PART.

TPL's motion regarding prior litigations addresses three discrete sets of disputes: (1) prior disputes among Patriot, TPL, and/or Alliacense; (2) TPL's bankruptcy; and (3) the co-pending ITC Investigation No. 337-TA-853.  The court addresses each in turn below.

**a.    Prior Disputes Between Patriot, TPL, and/or Alliacense**

TPL first moves to exclude any reference to prior disputes among the Defendants.  TPL acknowledges that although prior disputes among Defendants concerning which entity possessed the legal right to license the patents-in-suit may be relevant to this litigation, but argues that HTC will improperly use such evidence to suggest that Defendants did not "present a united front" in

2
Case No.: 5:08-cv-00882-PSG
ORDER

pursuing licensing and litigation strategies toward HTC. TPL further argues that this misuse of the evidence will result in substantial unfair prejudice.

HTC responds that the prior disputes among Defendants are relevant to a hypothetical negotiation under the *Georgia-Pacific* factors. HTC points to the testimony of its damages expert who opines that uncertainty surrounding TPL's patent rights would reduce TPL's bargaining power and drive down the price of any license agreement between HTC and TPL.

The court agrees that evidence of litigation among Defendants could weaken TPL's relative bargaining power vis-à-vis HTC, even as it recognizes that unfair prejudice may result from admission of the evidence. On balance, the court finds the resulting unfair prejudice and confusion of the evidence would not substantially outweigh the probative value of the evidence. Although TPL notes that its right to license the asserted patent rights is not disputed, a fact does not have to be in dispute to be relevant.[1]

The court DENIES TPL's motion in limine to exclude evidence of prior disputes among Defendants. To mitigate whatever unfair prejudice may result, the court invites TPL to offer a limiting instruction under Rule 105 for the court to give at an appropriate time during trial.

### b. TPL's Bankruptcy

TPL argues that its voluntary petition for Chapter 11 bankruptcy on March 20, 2013, is not relevant, and even if it is relevant, is inadmissible under Rule 403, because the risk of unfair prejudice and jury confusion substantially outweighs the probative value of the evidence. TPL suggests that evidence of the bankruptcy proceeding might unduly taint the jury's opinion of TPL.

HTC responds that TPL's Chapter 11 petition is relevant and probative of the success of TPL's licensing program. HTC anticipates that TPL will point to the cumulative value of the licensing of the MMP portfolio to demonstrate the commercial success of the MMP patents and as

---

[1] *See* Fed. R. Evid. 401 Adv. Comm. Notes ("The fact to which the evidence is directed need not be in dispute.")

3
Case No.: 5:08-cv-00882-PSG
ORDER

a secondary consideration of non-obviousness. HTC requests that the court permit evidence of TPL's bankruptcy to the extent that TPL offers evidence of the total revenues that TPL generated from licensing the MMP portfolio.

Although evidence of TPL's bankruptcy may be relevant, HTC's failure to tie TPL's bankruptcy to a lack of success in licensing the MMP portfolio leaves the court guessing on the cause of TPL's bankruptcy.[2] Without more, the court is unwilling to permit HTC's referral to TPL's bankruptcy given the high likelihood of substantial prejudice to TPL. A reference to bankruptcy may trigger visceral reactions among jurors and the court believes such a reaction carries a risk of substantial unfair prejudice. Moreover, there is a substantial risk that evidence of TPL's bankruptcy will confuse the issues.

The court GRANTS TPL's motion to exclude evidence of TPL's bankruptcy.

### c.    The Co-pending ITC Investigation No. 337-TA-853

TPL moves the court to exclude evidence of the co-pending ITC Investigation No. 337-TA-853. TPL points out that the ITC investigation involves different products and different claim constructions. Moreover, TPL argues, the ALJ's initial determination at the ITC is not preclusive in this litigation. TPL makes a Rule 403 argument that the evidence of the co-pending ITC investigation will result in a significant danger of unfair prejudice, confusion of the issues, and misleading the jury, and also implicates considerations of undue delay and waste of time.

HTC counters that the ITC investigation, in particular the ALJ's initial determination and the Staff Attorney's positions, constitute objective evidence that HTC should be able to rely upon to overcome a charge of willful infringement under *Seagate*. HTC suggests that TPL "underestimates the sophistication and intelligence" of this court's jury pool. HTC argues that

---

[2] For example, TPL may well have been successful in licensing the portfolio and sought a voluntary Chapter 11 proceeding to rearrange its debt obligations.

4
Case No.: 5:08-cv-00882-PSG
ORDER

jurors from the "heart of Silicon Valley" will have a solid understanding of the technical and legal issues in this case and will be able to contextualize the precedential wake recent ITC decisions cast upon this district court action.

Although the court does agree that this district's jury pool is quite capable, it cannot countenance the likely confusion that will result upon admission of evidence of a co-pending investigation at the ITC on this litigation.

TPL's motion to exclude evidence of the co-pending ITC investigation is GRANTED.

**2. Motion to Exclude Mr. Russell H. Fish's Testimony**

IT IS HEREBY ORDERED that TPL's regarding the testimony of Mr. Russell H. Fish is DENIED.

TPL moves to exclude Mr. Fish's testimony. TPL raises concerns that HTC will rely on Mr. Fish's testimony to alter the scope of the asserted claims or revisit the court's claim construction. TPL also argues that inventor testimony in the context of litigation is particularly unreliable. TPL rightly points out that it is not unusual for there to be a significant, actual difference between what the inventor thinks her patented invention constitutes and the ultimate scope of the patent claims following issuance from the PTO.[3] In sum, TPL argues that the testimony of Mr. Fish offered by HTC regarding the validity of the asserted patents is unreliable and irrelevant.

HTC counters and argues that the Federal Circuit has long recognized that inventor testimony is generally admissible. HTC specifically points to the relevance of Mr. Fish's testimony in the context of HTC's attempt to counter TPL's claim of willful infringement. HTC represents that it will not rely on Mr. Fish's testimony for the purposes of contradicting the court's

---

[3] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) (*en banc*).

5
Case No.: 5:08-cv-00882-PSG
ORDER

claim construction. Finally, HTC argues that Mr. Fish's testimony is not hearsay since the testimony is a statement of a party opponent under Fed. R. Evid. 801(d)(2)(A).[4]

On balance, especially given HTC's representations that it will not rely on Mr. Fish's testimony to alter the court's claim construction, the court finds that Mr. Fish's testimony is relevant and will not create a substantial risk of unfair prejudice, confusion of the issues, misleading the jury, creating undue delay, wasting time, or needlessly presenting cumulative evidence. Regardless of whether Mr. Fish's testimony constitutes a statement of a party opponent, if HTC is only offering the testimony to establish what Mr. Fish thought of his invention and not to establish the truth of Mr. Fish's contentions about his invention (e.g. that the patent was actually invalid), his statements are not hearsay.

### 3. Motion to Exclude Derogatory Characterizations of Patent Holders

IT IS HEREBY ORDERED that HTC's motion to exclude derogatory characterizations of patent holders including the term "patent troll" is GRANTED-IN-PART.

TPL moves to exclude HTC's use of derogatory characterizations of patent holders, including the term "patent troll." TPL raises concerns that HTC may attempt to "cloud" the lawful enforcement of TPL's patent rights through reliance on derogatory labels. TPL argues that reference to terms like "patent troll" may conjure negative stereotypes about those who seek to obtain and enforce patents.

HTC counters that TPL's motion is overly broad and does not provide enough guidance for the court. In particular, HTC raises concerns that TPL will seek to exclude relevant and highly probative evidence related to past licenses merely because a term such as "troll" is referenced within an email.

---

[4] The statement of a party opponent constitutes an exclusion from, and not an exception to, the hearsay rule.

The court agrees in part with both parties. HTC is precluded from using derogatory characterizations of patent owners including the use of the term patent troll without prior court approval. HTC may refer more generally to a "non-practicing entity," a "patent assertion entity," or neutral language to that effect. Moreover, to the extent that relevant licensing emails refer to a patent owner as a troll, HTC shall exclude that characterization.

### 4. Motion to Preclude the Expert Testimony of Mr. Thomas A. Gafford

IT IS HEREBY ORDERED that TPL's motion regarding the expert testimony of Mr. Thomas A. Gafford is DENIED.

Defendants move to preclude the expert testimony of Mr. Thomas A. Gafford. TPL claims that Mr. Gafford lacks the relevant training, education, and experience to qualify him as an expert on the issues of invalidity and non-infringement of the '336 and '890 patents. In particular, TPL points to Mr. Gafford's lack of experience with the structural and operational design of microprocessors on a single integrated circuit. HTC points out that the bar to qualify as an expert is low[5] and the strength of an expert's credentials "go to the weight, not the admissibility, of his testimony."[6] HTC argues that Mr. Gafford should qualify as an expert under Rule 702 and points to Mr. Gafford's bachelor's degree in electrical engineering, graduate coursework regarding microprocessor design, prior work experience with startups related to microprocessor design, prior litigation experience related to microprocessor design, and additional design experience with macroprocessors. HTC claims that Mr. Gafford's experience in designing multi-chip processors (i.e. macroprocessors) is particularly pertinent in this case, because the accused HTC products contain multi-chip processors.

---

[5] *See* Fed. R. Evid. 702.

[6] *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (internal quotations and citations omitted)

7

Case No.: 5:08-cv-00882-PSG
ORDER

The court finds that HTC has met the minimal threshold requirements of Rule 702 and therefore Mr. Gafford's testimony should not be excluded. TPL can draw out Mr. Gafford's alleged inexperience through an effective cross-examination to limit the weight the jury applies to Mr. Gafford's testimony.

### 5. Motion to Preclude the Expert Testimony of Dr. David May

IT IS HEREBY ORDERED that TPL's motion regarding the expert testimony of Dr. David May is DENIED.

Defendants also move to preclude the testimony of Dr. David May on two grounds. First, during his deposition Dr. May purportedly conceded that the '890 patent may not have been anticipated in contradiction of his earlier expert report. Second, Dr. May admitted during his deposition that the construction of one of the terms from his expert report was somewhat different from the court's construction. HTC counters that TPL has cherry-picked deposition testimony that is divorced from context. Furthermore, HTC argues that Dr. May's testimony consistently adhered to the court's construction throughout his deposition and expert report. HTC argues that one deposition excerpt cannot be the basis for striking Dr. May's entire report when his report, as a whole, hews closely to the court's constructions.

The court finds that Dr. May's testimony should not be excluded on these grounds. TPL is free to challenge the credibility of Dr. May's testimony at trial and can point to Dr. May's deposition to challenge inconsistent testimony.

## B. HTC's Motions

### 1. Motion to Preclude Reference to Cooley's Prosecution of the Patents-in-Suit

IT IS HEREBY ORDERED that HTC's motion to preclude reference to Cooley's prosecution of the patents-in-suit is GRANTED.

8
Case No.: 5:08-cv-00882-PSG
ORDER

HTC seeks an order from the court to preclude any reference to its outside counsel, Cooley LLP's, prior prosecution of the patents at issue in this litigation. While TPL does not seek disqualification of HTC's counsel, it claims that it has a right to raise arguments of possible bias or conflict of interest to the jury.

The court finds that any reference to Cooley's prior prosecution of the patents raises a risk of unfair prejudice, confusion of the issues, and misleading the jury that substantially outweighs the probative value of the evidence. Accordingly, no reference shall be made to Cooley's prosecution of the patents-in-suit. Any exhibits, including the patents-in-suit, shall be appropriately redacted.

### 2. Motion to Exclude Introduction of Article "25 Microchips that Shook the World"

IT IS HEREBY ORDERED that HTC's motion to exclude the article concerning the "25 Microchips that Shook the World" is GRANTED-IN-PART.

HTC argues that the article concerning the "25 Microchips that Shook the World" constitutes hearsay, is irrelevant, and inadmissible under Rule 403. HTC asserts that TPL wants to rely on the article to prove the truth of the matter asserted: i.e. the Sh-Boom processor really was one of the twenty-five microchips that shook the world.

TPL counters that the article does not constitute hearsay, because of TPL's purported reasons for offering the evidence. According to TPL, it is not actually trying to prove that the Sh-Boom was one of the twenty-five microchips that shook the world, but merely to establish that IEEE Spectrum published the article claiming that it was one of the twenty-five microchips that shook the world. TPL also argues that even if it was hearsay, the learned treatise exception under Rule 803(18) would apply. Finally, TPL asserts that the article qualifies for the residual hearsay exception under Rule 807, because the article possesses secondary indicia of reliability.

Hearsay constitutes an out-of-court statement offered for the truth of the matter asserted.[7] The parties dispute TPL's purpose for introducing the article as evidence. Without endorsing its interpretation of the exceptions to the rule against hearsay, the court agrees with TPL that the article does serve a non-hearsay purpose. In addition, a finding of industry acclaim is one of the secondary considerations that can be looked to in determining non-obviousness.

The court will permit the introduction of the article only to the extent that HTC raises invalidity arguments that the patents at issue in this litigation were obvious.

### 3. Motion to Preclude TPL from Discussing or Entering the Chandrakasan Book into Evidence

IT IS HEREBY ORDERED that TPL's motion regarding discussing or entering the Chandrakasan book is DENIED.

HTC moves to preclude TPL from discussing or entering the Chandrakasan book into evidence, because HTC claims the book is irrelevant under Rule 401 and that even if it is relevant the substantial risk of unfair prejudice, confusion of the issues, or misleading the jury substantially outweighs the probative value of the evidence. HTC claims the book is irrelevant because it does not specifically address the actual accused products and therefore does not make any fact of consequence more or less probative. TPL counters that the book is relevant because it lays a foundation for explaining how variations in process, voltage, or temperature affect the performance of microprocessors and integrated circuits (including their components) generally.

First, the court notes that the Chandrakasan book is the product of the current head of the MIT Electrical Engingeering and Computer Science Department and the chapter at issue was drafted by Sam Nassif, a Ph.D. level scientist who has worked at IBM for many years. Accordingly, the court is persuaded the book is, at a bare minimum, credible. The real dispute between the parties centers on whether or not the book can be relied by TPL to explain the

---

[7] *See* Fed. R. Evid. 801

10

Case No.: 5:08-cv-00882-PSG
ORDER

"varying" claim limitation. TPL claims that an authoritative text carries a significant and unjustified risk of leading the jury astray. HTC argues that the probative value of the evidence is not substantially outweighed concerns of unfair prejudice, confusion of the issues, and misleading the jury. The court notes that all technical evidence presented in any patent trial carries the very real risk of leading a jury astray. That risk is undoubtedly heightened by a party's reliance on an authoritative text. The court finds in this case that the Chandrakasan book is relevant and the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. Thus, Rules 401 and 403 do not preclude the introduction of the Chandrakasan book.

### 4. Motion to Exclude Evidence of the Entire Market Value, Size, Wealth, or Overall Revenues of HTC

IT IS HEREBY ORDERED that TPL's motion regarding evidence of the entire market value, size, wealth, or overall revenues is GRANTED.

Plaintiffs move to preclude the introduction of evidence or testimony relating to HTC's size, wealth, or overall revenues. HTC claims its status as a large and profitable company carries no probative value and could be misused by the jury to create unfair prejudice to HTC through the suggestion that HTC is a big company in comparison to the damages sought. TPL responds this case should be any different from other patent suits where the disparity in size and wealth of the parties are occasionally referenced by counsel.

However things "used to be done," recent Federal Circuit case law does not permit the use of a company's overall size or revenue as a check to confirm the reasonableness of a jury award.[8] The court finds that the probative value of evidence related to HTC's size, wealth, or overall

---

[8] *See Uniloc v. USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011). Consistent with the court's ruling on the Dr. Prowse Daubert motion (*see* Docket No. 563) this court's order does not preclude TPL from introducing evidence of HTC's revenue related to the accused products.

11
Case No.: 5:08-cv-00882-PSG
ORDER

revenues is substantially outweighed by the risk of unfair prejudice, confusion of the issues and misleading the jury necessitating its exclusion under Rule 403.

IT IS SO ORDERED.

Dated: September 6, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

12
Case No.: 5:08-cv-00882-PSG
ORDER