JAMES C. OTTESON, State Bar No. 157781
jim@agilityiplaw.com
THOMAS T. CARMACK, State Bar No. 229324
tom@agilityiplaw.com
PHILIP W. MARSH, State Bar No. 276383
phil@agilityiplaw.com
IRVIN E. TYAN, State Bar No. 224775
ityan@agilityiplaw.com
AGILITY IP LAW, LLP
149 Commonwealth Drive
Menlo Park, CA 94025
Telephone:  (650) 227-4800
Facsimile:   (650) 318-3483

Attorneys for Defendants
TECHNOLOGY PROPERTIES LIMITED and
ALLIACENSE LIMITED

CHARLES T. HOGE, State Bar No. 110696
choge@knlh.com
KIRBY NOONAN LANCE & HOGE
35 Tenth Avenue
San Diego, CA 92101
Telephone:  (619) 231-8666
Facsimile:   (619) 231-9593

Attorneys for Defendant
PATRIOT SCIENTIFIC CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACER, INC., ACER AMERICA CORPORATION and GATEWAY, INC., <br> Plaintiffs, <br> v. <br> TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, and ALLIACENSE LIMITED, <br> Defendants. | Case No.  5:08-cv-00877 PSG <br><br> **DEFENDANTS' COMBINED OPPOSITIONS TO NON-PARTY TEXAS INSTRUMENTS' MOTIONS TO QUASH TRIAL SUBPOENA** <br><br> Judge: Hon. Paul S. Grewal <br> Date: September 20, 2013 <br> Time: 10:00 a.m. (Special Set) <br> Courtroom: 5, Fourth Floor |

| | |
|---|---|
| HTC CORPORATION and HTC AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION and ALLIACENSE LIMITED, <br><br> Defendants. | Case No. 5:08-cv-00882 PSG |

# Table of Contents

Table of Contents ........................................................................................................................ iii

Table of Authorities .................................................................................................................... iv

Preliminary Statement ................................................................................................................. 1

Factual Background .................................................................................................................... 2

Argument ..................................................................................................................................... 4

      I.     LEGAL STANDARD ................................................................................................. 4

      II.    THE TRIAL SUBPOENA DOES NOT REQUIRE A TI WITNESS
            TO TRAVEL OUTSIDE OF CALIFORNIA .......................................................... 5

      III.   A TRIAL SUBPOENA MAY BE DIRECTED AT AN UNNAMED
            CORPORATE REPRESENTATIVE ....................................................................... 6

      IV.   TI HAS FAILED TO DEMONSTRATE ANY UNDUE BURDEN ...................... 8

      V.    WITNESS FEES DO NOT NEED TO BE TENDERED CONCURRENTLY
            AND HAVE IN ANY EVENT BEEN TENDERED ............................................ 10

Conclusion ................................................................................................................................ 11

# Table of Authorities

**Cases**

*Alicia T. v. County of Los Angeles*,
   222 Cal. App. 3d 869 (1990) ................................................................................................... 5

*Call of the Wild Movie, LLC v. Does 1-1,062*,
   770 F. Supp. 2d 332 (D.D.C. 2011) ........................................................................................ 4

*CF & I Steel Corp. v. Mistusi & Co. (U.S.A.), Inc.*,
   713 F.2d 494 (9th Cir. 1983) ................................................................................................. 11

*Conyers v. Balboa Ins. Co.*,
   No. 8:12–cv–30–T–33EAJ, 2013 WL 2450108 (M.D. Fla. June 5, 2013) ..................... 6, 7, 11

*Coram Healthcare Corp. v. Cigna*,
   No. 00 Civ. 2677(RMB), 2002 WL 32910044 (S.D.N.Y. July 24, 2002) ................................ 8

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
   265 F.R.D. 235 (D. Md. 2010) ................................................................................................ 7

*Donoghue v. Orange County*,
   848 F.2d 926 (9th Cir. 1987) ................................................................................................... 6

*Garcia v. Resurgent Capital Servs., LP*,
   No. C–11–1253 EMC, 2012 WL 1563984 (N.D. Cal. April 27, 2012) ................................ 6, 7

*Hill v. National Railroad Passenger Corp.*,
   1989 U.S. Dist. LEXIS 9011 (E.D. La. July 28, 1989) ........................................................... 7

*In re Application of Willkie Farr & Gallagher LLP to Quash Subpoena*,
   Nos. 2:04 Civ. 0494, 2:04 Civ. 0584, 2008 WL 3884380 (S.D.N.Y. Aug. 14, 2008) ............. 8

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*,
   MDL No. 1358 (SAS), 2009 WL 1840882 (S.D.N.Y. June 24, 2009) ................................. 6, 7

*In re Vioxx Products Liability Litigation*,
   438 F. Supp. 2d 664 (E.D. La. 2006) ...................................................................................... 6

*In re Yassai*,
   225 B.R. 478 (Bankr. C.D. Cal. 1998) .............................................................................. 4, 10

*Linder v. Dep't of Defense*,
   133 F.3d 17 (D.C. Cir. 1998) ................................................................................................ 4

*Mirana v. Battery TaiShingCorp.*,
   2009 U.S. Dist. LEXIS 12212 (N.D. Cal. Feb. 5, 2009) ............................................................ 11

*Todd v. LaMarque*,
   No. C 03-3995 SBA, 2008 WL 564802 (N.D. Cal. Feb. 28, 2008) ............................................. 5

*United States v. Taylor*,
   166 F.R.D. 356 (M.D.N.C. 1996) ..................................................................................... 7, 9

*Wallis v. Centennial Ins. Co.*,
   2013 U.S. Dist. LEXIS 14181 (E.D. Cal. Jan. 21, 2013) ............................................................ 11

*Williams v. Asplundh Tree Expert Co.*,
   No. 3:05-cv-479-J-33MCR, 2006 WL 2598758 (M.D. Fla. Sept. 11, 2006) ...................... 6, 7, 11

*Williams v. City of Dallas*,
   178 F.R.D. 103 (N.D. Tex. 1998) ......................................................................................... 4

*Zamani v. Carnes*,
   2008 U.S. Dist. LEXIS 117829 (N.D. Cal. May 19, 2008) ........................................................ 5

**Statutes**

28 U.S.C § 1782 ................................................................................................................. 11

**Rules**

Civil L.R. 3-4 ....................................................................................................................... 5

Civil L.R. 7-3 ....................................................................................................................... 1

Fed. R. Civ. P. 45 ................................................................................................................ 5

Pursuant to Civil Local Rule 7-3, Defendants and Counter-Claimants Technology Properties Limited, Patriot Scientific Corporation, and Alliacense Limited (collectively "Defendants") respectfully oppose non-party Texas Instruments Inc.'s ("TI") motions to quash the trial subpoena.

**Preliminary Statement**

TI's two motions to quash Defendants' trial subpoena are not grounded in fact or law. TI represented to Defendants in no uncertain terms that it could not produce a corporate representative to testify about its OMAP chips at issue in the district court actions or in the ITC.

This proved to be false.

In early 2013 TI informed Defendants that it had shuttered its OMAP business and no longer had any knowledgeable witnesses. Relying on this assertion, Defendants agreed to forego a TI corporate deposition. Then, after the discovery period had passed, Defendants independently identified current TI employees who worked on the OMAP chips in question. However, in concert with its customers among the ITC Respondents, TI refused to produce additional information. Defendants applied for and issued an ITC trial subpoena. TI moved to quash Defendants' trial subpoena in the ITC claiming that Defendants were not diligent in obtaining discovery from TI and that it was an undue burden for TI to provide witnesses in light of the reductions-in-force in its OMAP business. The ITC ALJ denied TI's motion to quash, and TI produced a witness at trial who competently testified about its OMAP chips.

In Defendants' subpoena at issue here, Defendants seek substantially identical information as in the ITC—only for different OMAP chips. TI nevertheless recycles the same arguments here that were rejected in the ITC.

Having already lost before the ITC on this issue, TI now claims that Defendants cannot serve a trial subpoena on a TI corporate representative outside of 100 miles, and that TI has no obligation to educate such a witness on the topics identified in the subpoena. Federal cases from California to New York to Florida say otherwise.

TI improperly focuses its investigation of witnesses on its Bay Area offices, which are

within a 100 mile radius of this court.  Given that the scope of the subpoena reaches the entire state of California, TI's failure to properly investigate its Southern California offices is sufficient grounds to deny its motions.  Moreover, TI has failed to provide this Court with any evidence that a designated corporate representative from California would be unable to be educated on the limited topics set forth in the subpoena—through technical documents in TI's possession and current and past TI employees who worked on these chips.  Accordingly, TI has completely failed to meet its burden of proof as the moving party.

Further, because Defendants have significantly reduced the scope of the subpoena to focus on essentially the same testimony already provided by a TI witness in the ITC, as applied to two different OMAP chips, there is no undue burden to TI.

TI's motions to quash should be denied.

## Factual Background

Defendants served two deposition subpoenas on TI on January 4, 2013 requesting testimony on a number of discrete technical topics.  *See* Declaration of Sarah Vollbrecht In Support Of TI's Motion to Quash the Trial Subpoena ("Vollbrecht Decl."), Ex. 3 & 4.  Defendants had also previously served a subpoena on TI in the ITC investigation.  Declaration of Irvin E. Tyan In Support Of Defendants' Combined Opposition to TI's Motion to Quash Trial Subpoena ("Tyan Decl."), Ex. A.

Shortly thereafter, Defendants initiated a series of conversations with TI by e-mail and phone to discuss the deposition subpoenas in both district court actions and the ITC.  *Id.*, Ex. B & C.  On January 15, TI informed Defendants that it was attempting to locate witnesses to testify about the topics designated in Defendants' subpoena, but stated that its recent reduction in force in its OMAP business was making identification of knowledgeable witnesses difficult.  *Id.*, Ex. C.

On January 24, 2013, TI contacted Defendants to inform them that although TI had searched, it was unable to locate any current or former TI employees with knowledge regarding the topics identified in any of Defendants' three subpoenas in the district court actions or the ITC. *Id.*, Ex. D.  TI confirmed this in a subsequent e-mail on January 29, where it stated that "TI does

not even have a deponent to offer following the recent RIFs." *Id.*, Ex. E.

Accordingly, as of the end of January 2013, Defendants reasonably believed that TI had complied with the subpoenas to the extent it was able. Declaration of Philip W. Marsh In Support of Defendants' Combined Opposition to TI's Motion to Quash Trial Subpoena ("Marsh Decl."), ¶ 2. As a result, Defendants saw no reason to file a motion to compel or take any further action to secure TI's compliance with the subpoenas. For the same reason, Defendants did not seek leave to extend fact discovery in either the district court actions or the ITC as to TI.

Then things changed. Following the close of fact discovery in both the ITC and district court actions, Defendants independently discovered in March 2013 that current TI employee, Baher Haroun, was involved in the development of TI's OMAP processor. Marsh Decl., ¶ 3. Defendants also learned that Anant S. Kamath, who specialized in the architecture and design of digital PLLs (DPLL), analog PLLs, and DLLs—and the oscillator components therein—is a current TI employee. Tyan Decl., Ex. F.

The ALJ in the ITC investigation denied TI's motion to quash and TI was able to—despite its prior representations to the contrary—produce two witnesses who testified competently about a number of TI chips, including the OMAP family. Tyan Decl., Ex. G (public version of order denying TI's motion to quash) & M at 7 (arguing undue burden due to TI's "significant reductions-in-force in its OMAP business" where it would "likely need to devote significant employee time to research and analysis of whatever records may still exist relating to the OMAP chips, and then attempting to educate a witness based on this internal analysis."). Not only were these witnesses able to testify regarding the technical details of TI's chips, but they were able to draw circuit structures from memory in open court without notes.

In light of TI's ability to produce competent witnesses to testify about the OMAP chips in the ITC despite its prior representations to the contrary, Defendants served a trial subpoena to TI on August 20, 2013 in this case on many of the same topics. Vollbrecht Decl., Ex. 1. Defendants and TI met and conferred on September 6, when Defendants offered to enter into a stipulation that would allow Mr. Haroun's testimony in the ITC to cover the specific OMAP chips in the district court action. Tyan Decl., ¶ 9. TI replied that it would consider it, but instead filed its Motion to

1  Quash the Trial Subpoena ("Motion") [HTC Dkt. No. 565] that same day. *Id*. The Motion failed
2  to notice a hearing date or request for it to be heard on shortened time.
3        On September 10, 2013, TI contacted Defendants to request a stipulation to hear the
4  Motion on shortened time. Defendants agreed to sign onto a stipulation, which this Court granted,
5  with modifications to the deadline for Defendants' opposition and the hearing date. [HTC Dkt. No.
6  572] Defendants also re-served the original trial subpoena with estimated witness fees out of an
7  abundance of caution. Second Declaration of Sarah Vollbrecht ("Second Vollbrecht Decl."), Ex. 6.
8        In further meet and confer efforts, Defendants proposed further streamlining the scope of
9  the subpoena to exclude any testimony related to topics for the '890 patent and limiting testimony
10 related to the '336 patent to the authentication of two technical reference manuals, whether or not
11 a ring oscillator exists within a specific DPLL on the OMAP 730 and OMAP 850 chips, and if so,
12 the structure of such a ring oscillator. Tyan Decl., Ex. H. Defendants further proposed that a
13 sworn declaration might obviate the need for a TI witness to appear in person. *Id*. TI only agreed
14 to provide a witness to authenticate the manuals. *Id*., ¶ 11.
15       On September 12, 2013, TI filed a second motion to quash ("Second Motion") on
16 Defendants' re-served subpoena. [HTC Dkt. No. 570] In this combined opposition, Defendants
17 address the arguments raised in both TI's Motion and Second Motion.

## Argument

### I.  LEGAL STANDARD

      A party seeking to have a subpoena quashed bears the burden of proving the burdensome nature of the subpoena. *Linder v. Dep't of Defense*, 133 F.3d 17, 24 (D.C. Cir. 1998). The undue burden test balances (1) the burden imposed on the party subject to the subpoena, (2) the relevance of the information sought, (3) the breadth of the request, and (4) the litigant's need for the information. *Call of the Wild Movie, LLC v. Does 1-1,062,* 770 F. Supp. 2d 332, 354 (D.D.C. 2011).

      The burden is a heavy one. *In re Yassai*, 225 B.R. 478, 483-84 (Bankr. C.D. Cal. 1998) (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). Here, TI has failed to

carry that heavy burden.

## II. THE TRIAL SUBPOENA DOES NOT REQUIRE A TI WITNESS TO TRAVEL OUTSIDE OF CALIFORNIA

TI argues in its Motion that TI has no employees within 100 miles of the Court with the ability to testify regarding technical details of the OMAP 730 and 850 processors.  Motion at 4.  TI relies on Rule 45 and two cases for its authority.  TI's focus on the 100 mile rule is misplaced.

Rule 45(c)(3)(A)(ii) clearly states that "the person may be commanded to attend a trial by traveling from any such place **within the state** where the trial is held" (emphasis added).  *See also Todd v. LaMarque*, No. C 03-3995 SBA, 2008 WL 564802, at *2 (N.D. Cal. Feb. 28, 2008) (compelling non-party to travel more than 100 miles to appear at trial).

In contrast, TI's reliance and citation to *Zamani v. Carnes* is improper and a violation of L.R. 3-4.[1]  *Zamani* is clearly marked "NOT FOR CITATION".  *See Zamani v. Carnes*, 2008 U.S. Dist. LEXIS 117829 (N.D. Cal. May 19, 2008).  Moreover, the court in *Zamani* granted the motion to quash because "plaintiff sought a subpoena from the wrong court."  TI's second case is equally inapplicable, which involved an attempt to subpoena citizens and residents of Japan.

TI also argues that its presence in Northern California is based on the acquisition of another company, National Semiconductor.  Motion at 5.  This is simply irrelevant, since the reach of the trial subpoena is the entire state of California, not a 100 mile radius from the courthouse.  In fact, according to TI's website, TI has five California offices: San Diego, Irvine, Grass Valley, Sunnyvale, and Santa Clara.  Tyan Decl., Ex. I.  Due to its misplaced reliance on the 100 mile rule, TI's Motion and accompanying declarations are notably silent regarding TI's ability to produce a witness from one of its California offices outside the 100 mile radius.

Accordingly, TI has failed to meet its burden of proof as to why it cannot furnish a witness from anywhere within *California*, not the Bay Area.

---

[1] Civil L.R. 3-4(e) states: "Any order or opinion that is designated: "NOT FOR CITATION," pursuant to Civil L.R. 7-14 or pursuant to a similar rule of any other issuing court, may not be cited to this Court, either in written submissions or oral argument …"  Courts have taken this requirement seriously and imposed monetary sanctions for violations.  *See Alicia T. v. County of Los Angeles*, 222 Cal. App. 3d 869, 885-86 (1990).

### III. A TRIAL SUBPOENA MAY BE DIRECTED AT AN UNNAMED CORPORATE REPRESENTATIVE

TI argues, in its Second Motion, that "the Court must quash the trial subpoenas because they fail to designate individuals as mandated by Rule 45." Second Motion at 4. This is wrong. Numerous courts across the country have held that it is permissible to direct a trial subpoena at a corporate representative, named or unnamed. *See, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL No. 1358 (SAS), 2009 WL 1840882, at *1 (S.D.N.Y. June 24, 2009) (granting leave to serve trial subpoena on unnamed 30(b)(6) corporate representatives); *Garcia v. Resurgent Capital Servs., LP*, No. C–11–1253 EMC, 2012 WL 1563984, at *1 (N.D. Cal. April 27, 2012) (granting motion to compel attendance of named 30(b)(6) witness at trial); *Conyers v. Balboa Ins. Co.*, No. 8:12–cv–30–T–33EAJ, 2013 WL 2450108, at *1-2 (M.D. Fla. June 5, 2013) (denying motion to quash trial subpoena directed at unnamed corporate representative); *In re Vioxx Products Liability Litigation*, 438 F. Supp. 2d 664, 664-65 (E.D. La. 2006) (denying motion to quash trial subpoena directed at named corporate representative); *Williams v. Asplundh Tree Expert Co.*, No. 3:05-cv-479-J-33MCR, 2006 WL 2598758, at *2-3 (M.D. Fla. Sept. 11, 2006) (denying motion to quash trial subpoenas directed at unnamed corporate representatives).

In contrast to these recent cases permitting a trial subpoena to be directed at a corporate representative, TI only cites one decision from 1987 based upon an outdated version of Rule 45. Second Motion at 4 (*citing Donoghue v. Orange County*, 848 F.2d 926, 931 (9th Cir. 1987)). *Donoghue* is distinguishable because the plaintiff was attempting to subpoena Orange County, which is a *geographical region* as opposed to a *corporation*. In any event, the appellate court in *Donoghue* merely found that there was no "unusual or exceptional" abuses by the district court in exercising its discretion by quashing the subpoena to a county and noted an absence of authority to apply to the unique circumstances in that case. As set forth above, ample authority makes clear that corporations may be subpoenaed for trial.

TI also argues that it is not obligated to prepare a corporate representative for trial in the same manner as a 30(b)(6) deposition. Second Motion at 4. TI's argument mirrors the *Hill* case cited in its Second Motion:

> There is no provision allowing the use of the 30(b)(6)-type designation of areas of inquiry or allowing service on a corporation through an agent for service of process in order to compel a particular person, who may be a corporate employee outside the subpoena power of the court, to testify at trial.

*Hill v. National Railroad Passenger Corp.*, 1989 U.S. Dist. LEXIS 9011, at *1 (E.D. La. July 28, 1989).

The problem with TI's argument is that *Hill* was expressly disapproved by a recent case decided this past June. *See Conyers v. Balboa Ins. Co.*, 2013 WL 2450108, at *1 (M.D. Fla. June 5, 2013) (explicitly rejecting the holding in *Hill v. National Railroad Passenger Corp.*). *Conyers* considered *Hill* and found that "it is not supported by persuasive authority." *Id*.

A trial subpoena directed to the corporation seeking 30(b)(6) topics of testimony is entirely proper. *See Williams v. Asplundh Tree Expert Co.*, 2006 WL 2598758, at *2-3 (denying motion to quash trial subpoenas directed at unnamed corporate representatives on various disparate topics); *Conyers v. Balboa Ins. Co.*, 2013 WL 2450108, at *1-2 (denying motion to quash trial subpoena directed at unnamed corporate representative seeking 30(b)(6) topics); *Garcia v. Resurgent Capital Services, LP,* 2012 WL 1563984, at *1 (granting motion to compel 30(b)(6) corporate representative to attend trial); *In re MTBE Prods.,* 2009 WL 1840882, at *1 (granting leave to serve trial subpoena on any 30(b)(6) witnesses designated by ExxonMobil).

Here, TI—with five offices in California—regularly transacts business in California and has availed itself of the jurisdiction of this court. Accordingly, when served with a subpoena to a corporate representative with specific designated topics, TI owes a duty to "educate" an employee from one of its California offices as necessary. *See, e.g., Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 238 (D. Md. 2010) ("the corporation is expected to *create* a witness or witnesses with responsive knowledge") (emphasis in original, internal quotations omitted).

TI's argument that its OMAP division experienced a reduction in force is simply irrelevant:

> [I]t is not uncommon to have a situation … where a corporation indicates that it no longer employs individuals who have memory of a distant event or that such individuals are deceased. These problems do not relieve a corporation from preparing its Rule 30(b)(6) designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). Moreover, "[t]here is no requirement that a Rule 30(b)(6) witness have first-hand knowledge of and involvement in the

underlying transaction." *Coram Healthcare Corp. v. Cigna*, No. 00 Civ. 2677(RMB), 2002 WL 32910044, at *13 & n.32 (S.D.N.Y. July 24, 2002). Nor does TI escape its obligation to educate a 30(b)(6) representative because it's a non-party. *See In re Application of Willkie Farr & Gallagher LLP to Quash Subpoena*, Nos. 2:04 Civ. 0494, 2:04 Civ. 0584, 2008 WL 3884380 (S.D.N.Y. Aug. 14, 2008) (denying motion to quash subpoena directed at non-party's 30(b)(6) corporate representative).

Accordingly, numerous federal courts across the country have held that a trial subpoena directed at a corporate representative and designating areas of testimony is permissible.

## IV.   TI HAS FAILED TO DEMONSTRATE ANY UNDUE BURDEN

TI argues that it would be an undue burden to educate a witness due to a professed inability "to identify and locate any person having in-depth technical knowledge regarding the OMAP 730 and OMAP 850" processors. Motion at 6. TI suggests that, because the OMAP 730 and 850 chips are older, having been released in 2002 and 2005 respectively, the individuals working on those chips are no longer with the company. Motion at 5.

TI's claim is factually suspect because it made the same argument in the ITC and then produced two witnesses who provided in-depth technical testimony. TI's claim is also belied by LinkedIn profiles and TI's own website identifying individuals who claim to have knowledge in relevant areas:

- Anant Kamath is a senior design engineer at TI since July 2002 whose work included the "[a]rchitecture study and initial design of … 13 MHz to 480 MHz analog fractional PLL (2003-2004)" and "Specification, Architecture, design, execution, characterization, support of … High Accuracy Digital PLLs for USB2.0 and other SERDES (2004-2009)." Tyan Decl., Ex. F. His specialties include "**Architecture and Design of Digital PLL, Analog PLL, DLL**…" *Id.* (emphasis added). He is the co-author of an IEEE paper by current and former Texas Instruments' engineers that describes the ring oscillators found in these DPLLs. *Id.*, Ex. J.
- Erik Rainey is a software engineer at TI since March 2003 who was involved in

      adding "USB support to **OMAP730 and OMAP850** P2 device programming PC tool. Required modifying bootstrap code on OMAP chips to support USB." *Id.*, Ex. K (emphasis added).

- Baher Haroun, now a Senior Fellow at TI, has worked there since 1999. In addition to testifying about various OMAP processors at the ITC hearing, he is also the co-author of a TI ISSCC paper from 2004 that describes the DPLL in TI's chips. *Id.*, Ex. N.
- Despite TI's assertion that its OMAP business is obsolete, TI's current website features the OMAP 850. Tyan Decl., Ex. L. It is difficult to believe that TI would offer the OMAP 850 for sale if it did not have the in-house expertise necessary to support customers of the chip.

Indeed, the equivocal language in the declaration of Ethan Davis carefully avoids denying that TI has the requested information:

- "TI's mobile OMAP business has **almost** completely wound down."
- "[T]here are **few if any** individuals left at TI with in-depth technical knowledge regarding the OMAP 730 and OMAP 850 processors."
- "**To the extent** there are any knowledgeable individuals still at TI, they would **probably** be located in Dallas, Texas."

*See* Davis Decl. ISO Motion, ¶ 5-7. Similarly, during the meet and confer TI's counsel confirmed that the issue wasn't that no one at TI had knowledge, but that TI would have to send a witness from Texas. Tyan Decl., ¶ 9.

    However, TI does not need to send a witness from Texas. TI's legal obligation merely requires it to educate its California corporate representative from a variety of potential sources—including current and *past* employees as well as the technical documents themselves. *United States v. Taylor*, 166 F.R.D. at 361 (obligation for corporation to educate corporate representative "from documents, past employees, or other sources"). Neither the Davis or Vollbrecht declarations submitted by TI provide *any* mention of why it would not be possible for TI to designate someone to review its technical documents, or contact current employees (such as

1  Mssrs. Kamath and Rainey) or past employees who worked on the OMAP 730 and 850 chips.

2  Nor would it be an undue burden to bring a California witness up to speed. During
3  extensive meet and confer, Defendants drastically reduced the scope of the subpoena by offering
4  to eliminate all topics related to the '890 patent, and further reduce the scope of the remaining
5  topics for the '336 patent to a mere declaration that contained the following technical information:

- A technical document or a hand drawn diagram showing a ring oscillator within DPLL1, as described in the OMAP730 and 850 TRMs
- A declaration that such a ring oscillator is the component of DPLL1 that synthesizes an oscillation.

10 Tyan Decl., Ex. H. This information is critical to Defendants' evidence of infringement of the
11 '336 patent.

12  In the alternative, Defendants have also offered to enter into a stipulation where Mr.
13 Haroun's ITC testimony on OMAP chips from the ITC trial would apply to the OMAP chips at
14 issue here. Tyan Decl., ¶ 9. TI rejected this proposal as well. *Id*.

15  The information Defendants seek is limited in scope, and substantially identical to the
16 information TI already provided during the ITC hearing. The only differences are the particular
17 OMAP chips at issue. Accordingly, TI has entirely failed to meet its burden of explaining why a
18 TI engineer in California could not educate himself on these discrete topics by reviewing the
19 technical documentation and/or talking to an engineer in Texas or elsewhere who worked on the
20 DPLLs within those chips. *See In re Yassai*, 225 B.R. at 484 (holding that movants could not
21 meet their burden in demonstrating undue burden without evidence pertaining to the time, cost, or
22 inconvenience entailed in responding to the third-party subpoenas).

23 **V.  WITNESS FEES DO NOT NEED TO BE TENDERED CONCURRENTLY AND HAVE IN ANY EVENT BEEN TENDERED**

24  TI argues that the August 20 subpoena is defective because Defendants failed to tender
25 witness fees concurrently. Motion at 6. Defendants did not initially tender witness fees due to a
26 simple and practical reason: because TI's corporate representative has not yet been identified, it is
27 impossible to calculate mileage based on an unknown location. "[I]t is not possible to pay travel

expenses in advance when the identity and location of the witness have not been disclosed by [the subpoenaed party]." *See Conyers v. Balboa Ins. Co.,* 2013 WL 2450108, at *2 (rejecting as moot and unavailing the contention that the plaintiffs failed to tender certain travel expenses for an unnamed corporate representative).

In contrast, the *CF & I Steel Corp.* and *Wallis* cases relied upon by TI are both easily distinguishable because they involve *individuals* whose identities and locations are known in advance, as opposed to *unknown corporate representatives*. *Mirana* is also distinguishable because the subpoena was issued pursuant to 28 U.S.C § 1782 to foreign respondents.

In any event, this issue is moot because—out of an abundance of caution, Defendants re-served the subpoena on September 10 with a check for $440 tendering witness fees calculated based on the distance from TI's agent for service of process to the courthouse. Second Vollbrecht Decl., Ex. 6. Subsequent payment of fees is sufficient to preclude quashing the subpoena. *See Williams v. Asplundh Tree Expert Co.*, 2006 WL 2598758, at *2 (declining to quash the subpoena on the basis that witness fees were not tendered, when fees were later sent to counsel).

## Conclusion

Based on the foregoing reasons, Defendants respectfully request that TI's Motion and Second Motion be denied in their entirety.

Dated: September 17, 2013

Respectfully Submitted,

AGILITY IP LAW, LLP

By: /s/ *Irvin E. Tyan*
James C. Otteson
Thomas T. Carmack
Philip W. Marsh
Irvin E. Tyan

Attorneys for Defendants
TECHNOLOGY PROPERTIES LIMITED
and ALLIACENSE LIMITED

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                                                KIRBY NOONAN LACE & HOGE

                                                                By:   */s/ Charles T. Hoge*
                                                                              Charles T. Hoge

                                                                Attorneys for Defendant
                                                                PATRIOT SCIENTIFIC CORPORATION