1
2
3
4
5
6
7
8                              UNITED STATES DISTRICT COURT

9                            NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11   HTC CORPORATION AND HTC AMERICA,   )   Case No.: 5:08-cv-00882-PSG
     INC.,                              )
12                                      )   **FINAL JURY INSTRUCTIONS**
                        Plaintiffs,     )
13            v.                        )   **(Re: Docket Nos. 513, 645)**
                                        )
14   TECHNOLOGY PROPERTIES LIMITED,     )
     et al.,                            )
15                                      )
                        Defendants.     )
16   _____)

17
18
19
20
21
22
23
24
25
26
27
28

# 1.    FINAL INSTRUCTIONS

*Duty of Jury*

Members of the Jury: It is my duty to instruct you on the law.

You must not infer from these instructions or from anything I have said or done as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following all my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Case No.: 5:08-cv-00882-PSG
ORDER

*Burden of Proof – Preponderance of the Evidence*

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Case No.: 5:08-cv-00882-PSG
ORDER

1

*Burden of Proof – Clear and Convincing Evidence*

2   When a party has the burden of proof on any claim or affirmative defense by clear and convincing

3   evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is

4   highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

5

6   You should base your decision on all of the evidence, regardless of which party presented it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Case No.: 5:08-cv-00882-PSG
ORDER

*What Is Evidence*

The evidence you are to consider in your deliberations in deciding what the facts are consists of:

      1. The sworn testimony of any witness;

      2. The exhibits which are received into evidence; and

      3. Any facts to which the lawyers have agreed.

Case No.: 5:08-cv-00882-PSG
ORDER

*What Is Not Evidence*

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements and their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)  Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Case No.: 5:08-cv-00882-PSG
ORDER

*Evidence for a Limited Purpose*

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

Case No.: 5:08-cv-00882-PSG
ORDER

United States District Court
For the Northern District of California

*Direct and Circumstantial Evidence*

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

Case No.: 5:08-cv-00882-PSG
ORDER

*Ruling on Objections*

There are rules of evidence that control what can be received into evidence.  When lawyers asked questions or offered exhibits into evidence and a lawyer on the other side thought it was not permitted by the rules of evidence, that lawyer may have objected.  If I overruled the objection, the question was to be answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore the evidence.  That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

Case No.: 5:08-cv-00882-PSG
ORDER

*Credibility of Witnesses*

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)  The opportunity and ability of the witness to see or hear or know the things testified to;

(2)  The witness's memory;

(3)  The witness's manner while testifying;

(4)  The witness's interest in the outcome of the case and any bias or prejudice;

(5)  Whether other evidence contradicted the witness's testimony;

(6)  The reasonableness of the witness's testimony in light of all the evidence; and

(7)  Any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Case No.: 5:08-cv-00882-PSG
ORDER

*No Transcript Available to the Jury*

During deliberations, you will have to make your decision based on what you recall of the

evidence.  You will not have a transcript of the trial.

Case No.: 5:08-cv-00882-PSG
ORDER

United States District Court
For the Northern District of California

*Taking Notes*

I have permitted you to take notes to help you remember the evidence.  If you did take notes, you may share them with your fellow jurors as you deliberate.  No one will read your notes.  They will be destroyed at the conclusion of the case.


Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

Case No.: 5:08-cv-00882-PSG
ORDER

*Jury to Be Guided By Official English Language Translation/Interpretation*

Languages other than English were used during this trial.

The evidence to be considered by you is only that provided through the official court interpreters or translators.  Although some of you may know the language used, it is important that all jurors consider the same evidence.  Therefore, you must accept the English interpretation or translation. You must disregard any different meaning.

Case No.: 5:08-cv-00882-PSG
ORDER

*Use of Interpreters in Court*

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

Case No.: 5:08-cv-00882-PSG
ORDER

*Duty to Deliberate*

At the conclusion of these final instructions, you will begin your deliberations.  When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Case No.: 5:08-cv-00882-PSG
ORDER

*Deposition in Lieu of Live Testimony*

You heard deposition testimony in this case.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Case No.: 5:08-cv-00882-PSG
ORDER

*Impeachment Evidence – Witness*

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Case No.: 5:08-cv-00882-PSG
ORDER

*Expert Opinion*

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reason given for the opinion, and all the other evidence in the case.

Case No.: 5:08-cv-00882-PSG
ORDER

*Charts and Summaries Not in Evidence*

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

Case No.: 5:08-cv-00882-PSG
ORDER

1

*Demonstrative Evidence*

2 During the trial, materials have been shown to you to help explain testimony or other evidence in

3 the case.  Other materials have also been shown to you during the trial, but they have not been

4 admitted into evidence.  You will not be able to review them during your deliberations because

5 they are not themselves evidence or proof of any facts.  You may, however, consider the testimony

6 given in connection with those materials.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:08-cv-00882-PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Communication with Court*

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Case No.: 5:08-cv-00882-PSG
ORDER

*Return of Verdict*

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No.: 5:08-cv-00882-PSG
ORDER

# II.    PATENT JURY INSTRUCTIONS

*Summary of Contentions*

I will now summarize for you each party's contentions in this case. I will then tell you what each party must prove to win on each of its contentions.

As I previously explained, HTC filed suit in this court seeking a declaration that no claim of the '336 patent is infringed by HTC.

TPL filed a counter complaint alleging that HTC infringes the '336 patent by making, importing, using, selling, and offering for sale products that TPL argues are covered by claims 6, 7, 9, 13, 14, and 15 of the '336 patent.  TPL also argues that HTC's infringement was willful.  TPL also argues that HTC actively induced infringement of these claims of the '336 patent by others.  TPL is seeking money damages.

Your job will be to decide whether claims 6, 7, 9, 13, 14, and 15 of the '336 patent have been infringed.  If you decide that any claim of the '336 patent has been infringed, you will then need to decide any money damages to be awarded to TPL to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

Case No.: 5:08-cv-00882-PSG
ORDER

*Interpretation of Claims*

Before you decide whether HTC has infringed the claims of the patent, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. You should disregard any conflicting interpretation. My interpretation of the language should not be taken as an indication that I have a view regarding the issue of infringement. The decision regarding infringement is yours to make. The Parties have agreed to or the court has interpreted the following terms in the claims at issue. Any terms not construed below should be interpreted according to their plain and ordinary meaning.

**U.S. Patent Number 5,809,336 ("the '336 patent")**

1. The term "central processing unit" means "an electronic circuit on an integrated circuit that controls the interpretation and execution of programmed instructions."

2. The term "oscillator" means "[a] circuit capable of maintaining an alternating output."

3. The term "on-chip input/output interface" means "[a] circuit having logic for input/output communications, where that circuit is located on the same semiconductor substrate as the CPU."

4. The term "integrated circuit" means "[a] miniature circuit on a single semiconductor substrate."

5. The term "microprocessor" means "[a]n electronic circuit that interprets and executes programmed instructions."

Case No.: 5:08-cv-00882-PSG
ORDER

6. The term "oscillator . . . clocking" means "an oscillator that generates the signal(s) used for timing the operation of the CPU."

7. The term "processing frequency" means "[t]he speed at which the CPU operates."

8. The term "varying . . . in the same way" mean "[i]ncreasing and decreasing proportionally."

9. The term "external clock is operative at a frequency independent of a clock frequency of said oscillator" means "an external clock wherein a change in the frequency of either the external clock or oscillator does not affect the frequency of the other."

10. The term "external memory bus" means "[a] group of conductors coupled between the I/O interface and an external storage device."

11. The term "Off-chip external clock" means "[a] clock not on the integrated circuit substrate."

12. The term "external clock is operative at a frequency independent of a clock frequency of said oscillator" means "[a]n external clock wherein a change in the frequency of either the external clock or oscillator does not affect the frequency of the other."

13. The term "Track" means "[i]ncreasing and decreasing proportionally."

14. The term "clocking said central processing unit" means "providing a timing signal to said central processing unit."

15. The term "wherein said central processing unit operates asynchronously to said input/output interface" means "the timing control of the central processing unit operates independently of and is not derived from the timing control of the input/output interface such that there is no readily predictable phase relationship between them."

16. The term "ring oscillator" means "an oscillator having a multiple, odd number of inversions arranged in a loop, wherein the oscillator is variable based on the temperature, voltage and process parameters in the environment."

Case No.: 5:08-cv-00882-PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17.  The court has also found that a person of ordinary skill in the art reading the patent would understand that the phrase "as a function of" is describing a variable that depends on and varies with another, though not necessarily in an exact mathematical type functional relationship.

18.  The term "entire oscillator" (in claims 6 and 13) is properly understood to exclude any external clock used to generate the signal used to clock the CPU.

26

*Infringement*

I will now instruct you on the rules you must follow in deciding whether TPL has proven that HTC has infringed one or more of the asserted claims 6, 7, 9, 13, 14, and 15 of the '336 patent.  To prove infringement of any claim, TPL must persuade you that it is more likely than not that HTC has infringed that claim.

Case No.: 5:08-cv-00882-PSG
ORDER

*Direct Infringement*

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims.  The second step is to decide whether HTC has made, used, sold, offered for sale or imported within the United States a product that is covered by a claim of the '336 patent. If it has, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether the HTC products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

Whether HTC knew their respective products infringed or even knew of the patent does not matter in determining direct infringement.  For purposes of this case, there is one way in which a patent claim may be directly infringed: literal infringement.  The following instructions will provide more detail on this type of direct infringement.

28

Case No.: 5:08-cv-00882-PSG
ORDER

*Literal Infringement*

To decide whether an HTC product literally infringes a claim of the '336 patent, you must compare that product with the patent claim and determine whether every requirement of the claim is included in that product.  If so, that product literally infringes that claim.  If, however, that product does not have every requirement or element of the patent claim, the product does not literally infringe that claim.  You must decide literal infringement for each asserted claim separately and each of the accused HTC products should be separately compared to the invention described in each patent claim they are alleged to infringe.

Unless otherwise excluded by construction of the court, if the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in an accused HTC product.  The fact that an HTC mobile phone also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

Case No.: 5:08-cv-00882-PSG
ORDER

*Inducing Patent Infringement*

TPL argues that HTC indirectly infringed by actively inducing another to infringe the '336 patent. In order for there to be inducement of infringement by HTC, someone else must directly infringe a claim of the '336 patent; if there is no direct infringement by anyone, there can be no induced infringement. In order to be liable for inducement of infringement, HTC must:

    (1)  have intentionally taken action that actually induced direct infringement by another;

    (2)  have been aware of the '336 patent; and

    (3)  have known that the acts it was causing would be infringing.


If HTC did not know of the existence of the patent or that the acts it was inducing were infringing, it cannot be liable for inducement unless it actually believed that it was highly probable its actions would encourage infringement of a patent and it took intentional acts to avoid learning the truth.  It is not enough that HTC was merely indifferent to the possibility that it might encourage infringement of a patent.  Nor is it enough that HTC took a risk that was substantial and unjustified.


If you find that HTC was aware of the patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, HTC cannot be liable for inducement.

Case No.: 5:08-cv-00882-PSG
ORDER

*Willful Infringement*

In this case, TPL argues that HTC willfully infringed TPL's patent.

To prove willful infringement, TPL must first persuade you that HTC infringed a valid claim of TPL's patent.  The requirements for proving such infringement were discussed in my prior instructions.  In addition, to prove willful infringement, TPL must persuade you that it is highly probable that prior to the filing of the complaint on February 8, 2008, HTC acted with reckless disregard of the claims of TPL's patent.

To demonstrate such "reckless disregard," TPL must satisfy a two-part test.  The first part of the test is objective.  TPL must persuade you that HTC acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.  The state of mind of HTC is not relevant to this inquiry.  Rather, the appropriate inquiry is whether the defenses put forth by HTC fail to raise any substantial question with regard to infringement or validity.  Only if you conclude that the defenses fail to raise any substantial question with regard to infringement or validity, do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of HTC.  TPL must persuade you that HTC actually knew, or it was so obvious that HTC should have known, that its actions constituted infringement of a valid patent.

In deciding whether HTC acted with reckless disregard for TPL's patent, you should consider all of the facts surrounding the alleged infringement including, but not limited to, the following factors:

31

Case No.: 5:08-cv-00882-PSG
ORDER

(1)  Whether HTC acted in a manner consistent with the standards of commerce for its industry;

(2)  Whether HTC intentionally copied a product of TPL covered by the patent;

(3)  Whether or not HTC made a good-faith effort to avoid infringe the '336 patent, for example, whether HTC attempted to design around the '336 patent;

(4)  Whether or not HTC tried to cover up its infringement;

(5)  Whether or not there is a reasonable basis to believe that HTC did not infringe or had a reasonable defense to infringement.

Case No.: 5:08-cv-00882-PSG
ORDER

*Burden of Proof*

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that HTC infringed any valid claim of the '336 patent, you must then determine the amount of money damages to be awarded to TPL to compensate it for the infringement.

The amount of those damages must be adequate to compensate TPL for the infringement. A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

TPL has the burden to persuade you of the amount of its damages. You should award only those damages that TPL more likely than not suffered. While TPL is not required to prove their damages with mathematical precision, they must prove them with reasonable certainty. TPL is not entitled to damages that are remote or speculative.

Case No.: 5:08-cv-00882-PSG
ORDER

United States District Court
For the Northern District of California

*Reasonable Royalty*

If you determine that any products sold by HTC infringed any valid claims of the '336 patent, then

TPL should be awarded a reasonable royalty for all sales associated with each such product

infringing a particular patent.

Case No.: 5:08-cv-00882-PSG
ORDER

*Reasonable Royalty – Definition*

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the patent was valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

One way to calculate a royalty is to determine a one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covering all sales of the licensed product both past and future.  This differs from payment of an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

It is up to you, based on the evidence, to decide what royalty is appropriate in this case.

Case No.: 5:08-cv-00882-PSG
ORDER

*Reasonable Royalty – Relevant Factors*

In determining the outcome of the hypothetical negotiation, you should consider all facts known to the parties at the time infringement began. Some of the factors you may consider are:

(1)  Royalties received by the patent holder for licensing the patent-in-suit, proving or tending to prove an established royalty.

(2)  Rates the infringer paid for using other patents comparable to the patent-in-suit.

(3)  The nature of the license, i.e., exclusive or nonexclusive, restricted or unrestricted in terms of territory or to whom products covered by the patent claim may be sold.

(4)  The patent holder's policy to maintain its patent monopoly by not licensing others or by granting licenses under special conditions designed to preserve its monopoly.

(5)  The commercial relationship between the patent holder and infringer, such as whether they are competitors in the same territory in the same line of business.

(6)  The effect of selling the patented invention in promoting sales of other products of the infringer, the existing value of the patented invention to the patent holder as a generator of sales of non-patented items, and the extent of such derivative or convoyed sales.

(7)  The duration of the patent and the term of the license.

(8)  The established profitability of products covered by the patent claim, their commercial success, and their current popularity.

(9)  The advantages and benefits of the patented invention over older modes or devices, if any, that had been used to work on similar problems.

Case No.: 5:08-cv-00882-PSG
ORDER

(10)  The nature of the patented invention, the character of the patent holders' products covered by it, and the benefits to those who have used the invention.

(11)  The extent to which the infringer has made use of the patented invention and any evidence probative of the value of that use.

(12)  The portion of the profit or selling price that was customary in the business or in comparable businesses allow for the use of the invention or analogous inventions.

(13)  The portion of the realizable profits that should be credited to the patented invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)  The opinion and testimony of qualified experts.

(15)  The amount that a prudent licensor (such as the patent holder) and a prudent licensee (such as the infringer) would have agreed upon at the time infringement began if both had been reasonably and voluntarily trying to reach an agreement.

No one factor is dispositive, and you should consider the evidence that has been presented to you in this case on each one of the factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time when infringement began.

Case No.: 5:08-cv-00882-PSG
ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Date of Commencement*

Damages that TPL may be awarded by you commence on the date that HTC infringed the '336 patent.

Case No.: 5:08-cv-00882-PSG
ORDER

*Calculating Damages in Cases of Inducement*

In order to recover damages for induced infringement, TPL must either prove that the accused devices necessarily infringe the '336 patent or prove acts of direct infringement by others that were induced by HTC.  Because the amount of damages for induced infringement is limited by the number of instances of direct infringement, TPL must further prove the number of direct acts of infringement of the '336 patent—for example, by showing individual acts of direct infringement or by showing that a particular type of HTC products or uses directly infringes.

Case No.: 5:08-cv-00882-PSG
ORDER

*Patent Term Glossary*

A number of terms are defined below for your information and convenience.

**Abstract:**  A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Assignment:**  A transfer of patent rights to another called an "assignee" who upon transfer becomes the owner of the rights assigned.

**Claim:**  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph.  In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e. similar to a land owner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  Claims may be independent or dependent. An independent claim stands alone.  A dependent claim does not stand alone and refers to one or more other claims.  A dependent claim incorporates whatever the other referenced claim or claims say.

**Drawings:**  The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements:**  The required parts of a device or the required steps of a method.  A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment:**  A product or method that contains the claimed invention.

Case No.: 5:08-cv-00882-PSG
ORDER

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**Examination:**  Procedure before the U.S. Patent and Trademark Office whereby a Patent Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date:**  Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement:**  Violation of a patent occurring when someone makes, uses or sells a patented invention without permission of the patent holder, within the United States during the term of the patent.  Direct infringement is making, using or selling the patented invention without permission.

**Limitation:**  A required part of an invention set forth in a patent claim.  A limitation is a requirement of the invention.  The word "limitation" is often used interchangeably with the word "requirement."

**Office Action:**  A written communication from the Patent Examiner to the patent applicant in the course of the application examination process.

**Patent:**  A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, offering to sell, or selling an invention within the United States, or from importing it into the United States, during the term of the patent.  When the patent expires, the right to make, use or sell the invention is dedicated to the public.  The patent has three parts, which are a specification, drawings, and claims.  The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO):**  An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and

Case No.: 5:08-cv-00882-PSG
ORDER

trademarks.  It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art:** Previously known subject matter in the field of a claimed invention for which a patent is being sought.  It includes issued patents, publications, and knowledge deemed to be publicly available such as trade skills, trade practices and the like.

**Prosecution History:**  The prosecution history is the complete written record of the proceedings in the PTO from its initial application to the issued patent.  The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On:**  A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Requirement:**  A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty:** A royalty is a payment made to the owner of a patent by anon-owner in exchange or rights to make, use or sell the claimed invention.

**Specification (Patent):** The specification is a required part of a patent application and an issued patent.  It is a written description of the invention and of the manner and process of making and using the claimed invention.

Case No.: 5:08-cv-00882-PSG
ORDER

**Addendum**

A number of the HTC products accused of infringement in this case contain Qualcomm chips. The parties have agreed and HTC has verified that the HTC Phones listed in the table in Exhibit A contain the Qualcomm chips next to them. The parties have also agreed, and Qualcomm has verified, the following facts about the Qualcomm chips listed in Exhibit A:

1.  The Qualcomm chips shown in Exhibit A contain the application processors shown in Exhibit A;

2.  Each of the Qualcomm chips listed in Exhibit A includes phase locked loops (PLLs) at least one of which is associated with clocking the corresponding application processor;

3.  Each of the PLLs in paragraph 2 contains a voltage controlled oscillator or a current controlled oscillator that has a multiple, odd number of inversions arranged in a loop.

4.  The terms "application processor," "clocking," "voltage controlled oscillator" and "current controlled oscillator" used above come from Qualcomm technical documents produced in this case.

Case No.: 5:08-cv-00882-PSG
ORDER

**EXHIBIT A**

**HTC Phones with Qualcomm Chips**

| HTC Phone(s) | Qualcomm Chip | Application Processor |
|---|---|---|
| Mobile Phone Tilt / TyTN II [Kaiser] | MSM7200 | ARM 11 |
| HTC Touch Dual [Neon] | MSM7200 | ARM 11 |
| Touch Phone P3650 [Polaris] | MSM7200 | ARM 11 |
| Mobile Phone S730 | MSM7200 | ARM 11 |
| HTC Touch Diamond [Diamond] | MSM7201 | ARM 11 |
| HTC T-Mobile G1 [Dream] | MSM7201 | ARM 11 |
| HTC Touch Phone Fuze [Raphael] | MSM7201 | ARM 11 |
| HTC Smartphone Wildfire [Bee] | MSM7625 | ARM 11 |
| HTC Shift X9000 [Atlantis] | MSM7500 | ARM 11 |
| HTC Smartphone S640 [Iris] | MSM7500 | ARM 11 |
| HTC S720 / SMT5800 [Libra] | MSM7500 | ARM 11 |
| Mobile Phone XV6800 / HTC PDA Phone P4000 / PPC-6800 [Mogul, Titan ] | MSM7500 | ARM 11 |
| Touch Phone P3450 | MSM7500 | ARM 11 |
| HTC Smartphone EVO Shift 4G [Speedy] | MSM7x30 | Scorpion |
| HTC Smartphone G2 [Vision] | MSM7x30 | Scorpion |
| HTC Smartphone Inspire 4G [Ace] | MSM7x30 / MSM8255 | Scorpion |
| HTC Smartphone myTouch 4G [Glacier] | MSM7x30 / MSM8255 | Scorpion |
| HTC Smartphone ThunderBolt | MSM7x30 / MSM8655 | Scorpion |
| HTC Smartphone Desire [Bravo] | QSD8x50 | Scorpion |
| HTC Smartphone Surround [Mondrian] | QSD8x50 | Scorpion |
| HTC Smartphone HD7 [Schubert] | QSD8x50 | Scorpion |
| HTC Smartphone EVO 4G [Supersonic] | QSD8x50 | Scorpion |

United States District Court
For the Northern District of California

Case No.: 5:08-cv-00882-PSG
ORDER

**IT IS SO ORDERED.**

Dated: September 30, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 5:08-cv-00882-PSG
ORDER